### SOUTHWESTERN PUBLIC SERVICE CO. v. GOODWINE.

No. 6017.

Court of Civil Appeals of Texas. Amarillo. Dec. 19, 1949.

Rehearing Denied Jan. 23, 1950.

Cowsert & Bybee, Hereford, for appellant.

Aldridge & Aldridge, Farwell, for appellee.

STOKES, Justice.

This litigation, in the nature of a condemnation proceeding, was instituted by the appellant, Southwestern Public Service

Company, a public utility corporation having the right of eminent domain, against the appellee, Clyde V. Goodwine, for the purpose of condemning an easement for an electrical transmission line over and across the lands of the appellee. The petition was filed with the county judge of Parmer County, in which the land is situated, commissioners were duly appointed and appellee was given proper notice. The matter was heard and evidence presented before the commissioners on March 29, 1949. After hearing the evidence and contentions of the parties, the commissioners awarded damages to the appellee in the total amount of $1865. The award consisted of $561.25 for the easement which occupied a strip 30 feet in width, extending across the southeast portion of three quarter-sections of appellee's land, aggregating 4.49 acres, and $1303.75 damages to the remainder of his land. In due time appellee filed objections to the award and the case was properly placed upon the docket of the county court where it was tried before a jury on July 19, 1949. The case was submitted upon special issues, in answer to which the jury found that the land included in the strip covered by the transmission line was of the value of $493.90; that immediately before the condemnation of the strip, the remainder of appellee's land was of the value of $87,176.10; and that immediately after it was condemned, the remainder was of the value of $82,421.04. Based upon the findings of the jury, the court entered judgment for the appellee in the sum of $5,248.96, being the $493.90, value of the strip taken, and the difference in value of the remaining land before and after the 30 foot strip was condemned and appropriated by the appellant.

Appellant duly perfected its appeal and presents the case here upon nine assignments or points of error. The principal contention urged by the assignments is that the court erred in permitting testimony, submitting special issues to the jury, and entering judgment in favor of appellee for incidental damages to the entire tract of 800 acres because 320 acres, consisting of the north half of section No. 7 was not included in any of the pleadings and there

was no evidence that the 320 acre tract was in a common enclosure with that described in the pleadings as being the tracts upon which the condemned 30 foot strip was located.

The record shows that appellee's farm consists of 800 acres and that practically all of it is in cultivation. He had been living upon the land since 1909, a period of 40 years, during all of which time he had operated it, and was still operating it, as a farm unit. It consists of section No. 7 and the northwest quarter of section No. 8 lying immediately east of and adjoining section No. 7. The transmission line enters the northwest quarter of section No. 8 near the center of its east line and runs in a southwesterly direction through that quarter-section, entering the southeast quarter of section No. 7 near its northeast corner, passing through the latter quarter-section to a point a short distance north of its southwest corner. From there it proceeds through the extreme southeast corner of the southwest quarter of section 7 leaving a small triangular tract south of the transmission line in the southeast corner of that quarter-section. From this it will be seen that the north half of section No. 7 was not touched by the transmission line and none of it was included in the 30 foot strip that was condemned. Appellee filed no pleadings with the commissioners and appellant's pleading did not include the north half of section No. 7. In making their award, the commissioners described the land as it was described in appellant's pleading, hence the north half of section No. 7 was not included in it. When appellee removed the case to the county court he alleged that the award was wholly inadequate in the matter of damages and that the finding of the commissioners was contrary to law and the evidence. When the case was submitted to the jury the special issues referred to the appellee's tract of land and did not confine the jury's consideration to the three quarter-sections described in the award of the commissioners nor was the 800 acres specifically described. Appellant urges that it was error for the court to permit the jury to consider the entire tract of land because there were no

pleadings of either party, either before the commissioners or in the trial in the county court, that warranted the inclusion of the north half of section No. 7.

■■ It has been held in a number of cases that formal pleading of a land owner, setting out his damages and particularizing the injuries done to his land by condemnation proceedings such as this, it not necessary because the law designates the damages to which he is entitled. The statutes provide that the damages shall consist of the value of the land taken and the injury, if any, to the remaining portion caused by the condemnation and taking of the property. Article 3264 et seq., Vernon's Annotated Civil Statutes. Recovery of these items is secured to the owner of such lands and there are no other issues of fact to be determined. There is, therefore, no reason for requiring the owner of property sought to be condemned to allege the damages sustained by him nor to specify the elements of damage produced by the condemnation proceeding. The land is there, open to the view of the condemnor, and he is as well informed of the consequences of the condemnation as he could be by any sort of allegations and pleading. Concho, S. S. & L. V. Ry. Co. v. Sanders, Tex. Civ.App., 144 S.W. 693; Wichita Falls & W. R. Co. of Texas v. Wyrick, Tex.Civ. App., 158 S.W. 570; Lower Colorado River Authority v. Hughes, Tex.Civ.App., 122 S.W.2d 222; Kennedy v. City of Dallas, Tex.Civ.App., 201 S.W.2d 840, and the many other cases therein cited.

■ Appellant contends further that, since the north half of section No. 7 was not shown to be within the same enclosure as the tracts over which the 30 foot strip was condemned, it should not have been taken into consideration in estimating appellee's incidental damages. The statute, Art. 3265 R.C.S., provides that when only a portion of a tract or parcel of a person's real estate is condemned, the commissioners shall estimate the injuries sustained and the benefits received thereby by the owner; whether the remaining portion is increased or diminished in value by reason of such condemnation; and the extent of such in-

crease or diminution, and shall assess the damages accordingly. There is no provision of the statute which confines the incidental damage to any particular tract as laid out in official maps or plats, nor to that which is contained in a single enclosure. It is referred to in the statute as the remaining portion of the tract or parcel of a person's real estate. Of course, conditions could be presented, and have been, in which it would not be in keeping with the purpose and intention of the law to include isolated tracts, having no connection with that involved in the condemnation. It is often difficult to determine what is a distinct and independent tract when only a part of a tract or parcel of land is taken. Exceptional circumstances will sometimes throw out of gear the most carefully guarded rule. In general, the compensation to the owner is to be estimated by reference to the uses for which the property is suitable or for which it is being used at the time it is taken or such as may reasonably be expected in the immediate future. Although a parcel of land might consist of contiguous tracts, recognized and shown on official maps or plats as lots, blocks, sections or subdivisions of sections, if they constitute an entire parcel, used for one general purpose by the owner, the inquiry in condemnation proceedings should embrace all injuries and damages that will be caused to the entire body of land being so used. Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211; St. Louis M. & S. E. R. Co. v. Aubuchon, 199 Mo. 352, 97 S.W. 867, 9 L.R.A.,N.S., 426, 116 Am.St.Rep. 499, 8 Ann.Cas. 822; Doud v. Mason City & Ft. D. Ry. Co., 76 Iowa 438, 41 N.W. 65; Concho, S. S. & L. V. Ry. Co. v. Sanders, Tex.Civ.App., 144 S.W. 693.

■ As we have already said, the entire tract of 800 acres, consisting of all of section 7 and the northwest quarter of section 8, is used, appropriated, cultivated and utilized by the appellee as a unit. According to the testimony, he plants, cultivates and produces wheat, maze and other feed stuffs every year, cultivating it with his own, and hired, labor. The undisputed testimony showed that, in order to cultivate the crops in that portion of his farm over

which the transmission line extends, it is necessary to stop his tractors and other ponderous farm machinery when the structures or poles are reached, pass around them with considerable difficulty and then back up as near to the poles as possible before proceeding. It was further shown that an area around each of the thirteen or fourteen structures across the farm could not be cultivated and that noxious weeds grew there. The transmission line is a permanent installation, hence these difficulties in cultivating the land and operating the farm will continue through the years and for an indefinite period of time. A number of the witnesses considered the installation of the transmission line to be a detriment to the entire farm. All this leads us to the conclusion that this contention of appellant is not well taken and it will therefore be overruled.

■ Appellant next contends that the court erred in admitting testimony, over its objection, concerning the value of the land when it was evident the witnesses were taking into consideration the value of the improvements and the fact that it was potentially irrigable land. The evidence showed valuable improvements and also that there was an irrigation well a short distance north and another one a short distance south of appellee's farm, and some of the witnesses said they were considering these in estimating the value which they placed upon the entire tract. The estimates of value pertained principally to the difference in value immediately before and immediately after the establishment of the transmission line. Some of the witnesses estimated the damage at $15 per acre. Others testified that, before the establishment of the transmission line, the land was worth $100 per acre and after its establishment, the land was worth $90 per acre. Most all of this testimony was based upon the added difficulty in cultivating the land by the presence thereon of the poles, structures and equipment composing the transmission line. One witness placed these values at $125 per acre before the establishment of the line and $100 per acre after its establishment. These witnesses said the added difficulty in cultivating the farm affected its market value and materially reduced it. From this it will be seen that, regardless of whether the improvements and prospects of irrigation were included or not, the entire tract was damaged by the establishment of the transmission line to the extent of at least $10 per acre, which far exceeded the amount of the judgment. It was, therefore, immaterial whether the witnesses considered the improvements and the prospects of the land being irrigable in giving their estimates of its value because all of them who believed the transmission line would be detrimental to the farm agreed it had been damaged at least $10 per acre.

■. The next contention urged by appellant is that the judgment should be reversed because the amount found by the jury as damages was excessive to the extent that it showed prejudice of the jurors against appellant. The amount of damages found by the jury was far below the lowest estimate of damage made by any witness other than those who expressed the opinion that establishing such a transmission line across a farm did not result in any damage whatever. We find nothing in the record which indicates any prejudice on the part of any of the jurors and in our opinion this contention is without merit.

■ In submitting the case to the jury upon the question of the value of the 30 foot strip covered by the transmission line, the court submitted only one issue. By it the jury was asked to find the market value of the strip condemned. There were no special issues submitted concerning the value of the strip before and after its condemnation. Appellant urges error in the failure of the court to submit issues upon these questions and, in our opinion, the point is well taken. The testimony showed that most of the land within the 30 foot strip can still be cultivated, although the structures and poles present conditions which will make its cultivation difficult. However, appellee offers to remit the entire amount of the judgment which was based upon the finding of the jury as to the value of the 30 foot strip. The jury found the

entire strip to be of the value of $493.90. This finding makes certain the amount of the judgment involved in this assignment and is therefore a proper item for remittitur. If the remittitur is filed within ten days from this date, the judgment of the court below will be affirmed; otherwise, it will be reversed and the cause remanded.

Affirmed on condition of remittitur.