**TEXAS ELECTRIC SERVICE COMPANY, Appellant,**

v.

**F. W. MERKET et al., Appellees.**

**No. 3272.**

Court of Civil Appeals of Texas.

Eastland.

March 8, 1957.

Rehearing Denied March 29, 1957.

Cantey, Hanger, Johnson, Scarborough & Gooch, Ft. Worth, R. H. Ratliff, Colorado City, for appellant.

Dell Barber, Colorado City, for appellees.

COLLINGS, Justice.

Texas Electric Service Company, an electric utility company, brought this statutory condemnation proceeding against F. W. Merket and wife, landowners, and F. W. Merket, Jr. and Eugene A. Merket, tenants, to condemn an easement or right of way over a strip of land fifty feet wide comprising three acres for the purpose of erecting and maintaining thereon electric transmission lines. Special commissioners appointed by the County Judge of Mitchell County, after a hearing, awarded defendants $475. The defendants appealed from this award. When the case was called for trial in the County Court, defendants admitted that plaintiff was a public utility corporation, had authority to condemn the property and that the only disputed issue was that of damages. Upon the trial the jury found the 320 acre tract of land was of the value of $125 per acre before the condemnation proceeding. The jury further found the three acre strip to be worth $25 per acre and the remaining 317 acres to be worth $118 per acre immediately

after the condemnation proceeding. Judgment was entered on the jury verdict awarding defendants $2,519 damages. Texas Electric Service Company has appealed.

By the terms of the judgment the easement acquired by the Texas Electric Service Company included the right to erect upon the fifty foot strip crossing the appellees' 320 acres of land 5 H-frames, each consisting of two poles approximately twelve and a half feet apart with cross arms not exceeding twenty-two feet in length fastened upon the H-frames at right angles to the direction of a line at a height of not less than twenty-seven feet above the surface of the ground, said cross frames supporting metallic wires not exceeding five in number attached thereto with brass screws, pins and insulators and other necessary or proper attachments. The company also acquired the right to prevent the construction of any building or structure within twenty-five feet on either side of the center line strip described and also acquired the right of ingress and egress "over and across the above described land and defendants *ajoining* property for the purpose of constructing, maintaining and reconstructing said electric transmission line."

Appellant does not question the jury finding that the value of the three acre easement strip and the remaining 317 acres of appellees land immediately prior to condemnation was $125 per acre, nor does appellant question the finding that the value of the three acres easement strip immediately after the condemnation was $25 per acre. The controversy presented by this appeal involves the value of the remaining 317 acres of appellees' land immediately after the condemnation.

In appellant's first four points it is contended that the evidence shows the damage to appellees' land was confined to the fifty foot right of way strip comprising three acres and did not extend to the remainder of said land and that there is no evidence

or, in the alternative, that the evidence is not sufficient to support the jury finding that the value of appellees' remaining 317 acres was, immediately after the condemnation, $118 per acre. In appellant's fifth point it is urged that the judgment should be set aside because the damages awarded are so excessive as to show that the jury based its findings upon passion and prejudice and not upon the evidence.

■ It is held that in the taking by condemnation of an easement strip across a tract of land the damages to the remaining portion of the tract is determined by ascertaining the difference between the market value of the remaining portion of the tract immediately before and immediately after the taking. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979.

In the case of Texas Pipe Line Co. v. Hunt, 149 Tex. 33, 228 S.W.2d 151, 155, Judge Garwood, in discussing evidence of probative force to sustain a finding of depreciation in the market value of a tract other than the easement strip as a result of the condemnation of such strip states as follows:

"* * * the issue of depreciated market value, which is the ultimate one in such cases, is largely a matter of opinion evidence, and a very wide range of factors may be legitimately taken into consideration by qualified witnesses as the foundation for their opinions. It may well be, as argued, that if the opinion should be shown to be based exclusively upon considerations of remote, fanciful or otherwise incompetent character, they would have to be disregarded, but, all opinion being at best something of a speculation, it does not cease to have probative force when impropriety attaches only to some, rather than all, of its underlying reasons. The question of market value is thus peculiarly one for the fact finding body, subject to the control of the court in the manner indicated in the Carpenter case, as :

well as through the powers of the trial court and Court of Civil Appeals with respect to verdicts properly classed as excessive. Of the various and evidently qualified witnesses who testified in this case to a substantial depreciation in market value we cannot say that every reason given in support of these opinions was invalid at law so as to render all the testimony a nullity. That market value might be adversely and substantially affected by the existence of an underground gasoline pipe lying along all points at which respondents' tract adjoined the right of way of the only railroad abutting on their property is hardly less reasonable to suppose than that an electric power line across a tract may reduce its market value by reason of interference with radio reception of future dwellers on the tract."

■ Several witnesses testified to a difference in value of the land in question immediately before and immediately after condemnation of the easement strip greater than that found by the jury. There was evidence to the effect that the land was terraced and that the terraces crossed the transmission line at least three times; that it was inconvenient and more expensive to cultivate appellees' land after the condemnation because it was necessary to stop the tractor or other heavy machinery when the structures or dual poles were reached; that to pass around such structures was difficult, that it was sometimes necessary to back up before proceeding; that there was danger of damage to the machinery by striking or hanging on the poles, which was a particularly likely occurrence when hired help was used; that the existence of the transmission line would hinder the dusting of cotton crops by plane; that all of appellees' property was subject to appellant's right of ingress and egress for the purpose of constructing, maintaining and reconstructing said electric transmission line; that the high voltage lines would present a storm hazard and would interfere

with telephone, radio and television service on much of the land.

Appellant's contention that there was no evidence to support the jury finding that the value of appellees' remaining 317 acres of land was, immediately after the condemnation, $118 per acre is overruled. Sample v. Tennessee Gas Transmission Company, 151 Tex. 401, 251 S.W.2d 221. We also overrule appellant's contention that the evidence was not sufficient to support the jury finding concerning damages to appellees' land and that the judgment was excessive and unreasonable. Atlantic Pipe Line Co. v. Fields, Tex.Civ.App., 256 S.W.2d 940 (RNRE); Southwestern Public Service Co. v. Goodwine, Tex.Civ.App., 228 S.W.2d 925 (RNRE); Southwestern Gas and Electric Company v. Anderson, Tex.Civ.App., 217 S.W.2d 47 and Reeves v. City of Dallas, Tex.Civ.App., 195 S.W. 2d 575 (RNRE).

The judgment of the trial court is affirmed.