**TEXAS ELECTRIC SERVICE COMPANY,**
Appellant,

v.

**Homer ETHEREDGE et ux., Appellees.**

No. 3444.

Court of Civil Appeals of Texas.

Eastland.

April 17, 1959.

Cantey, Hanger, Johnson, Scarborough & Gooch, Fort Worth, Rountree, Renner & Snell, Lamesa, for appellant.

Karl Cayton, Lamesa, for appellees.

GRISSOM, Chief Justice.

Texas Electric Service Company brought this suit against Homer Etheredge and wife for the purpose of condemning a fifty foot wide easement across their farm. The farm consists of 129 acres in rectangular shape, nearly twice as long as wide. The fifty foot strip condemned, 2.4 acres, runs from the west line of the Etheredge farm, starting less than one-third of the length of the tract from its south end, angles across the middle of the farm and exits toward the northeast on its east line. The easement was condemned for the purpose of constructing and maintaining across the farm high voltage electric lines constructed, according to the plaintiff's pleadings, as follows:

"4 H-frames will be erected, said H-frame each consisting of 2 poles not exceeding 18″, in diameter at the ground line and not exceeding 65′ in length, erected in an upright position to a depth of not exceeding 9′, and not exceeding 15′ apart, with cross arms not exceeding 32′ in length fastened upon H-frames at right angles to the direction of said line at a height of not less than 27′ above the surface of the ground, with metallic wires not exceeding 5 in number to be from H-frame to H-frame and sustained in the air by attachment to said cross arms and poles, together with braces, screws, pins, insulators, and other fasteners, appliances, and attachments as may be necessary and proper for attaching said cross arms

to said poles and said wires to said cross arms and poles to the ground and such other type of construction which may in the future seem to be proper."

This line was not constructed to serve the Etheredges, but to carry plaintiff's electricity across their farm. A jury found, in effect, that the difference between the market value of the 2.4 acres immediately before and after its condemnation was $345. In answer to issue three the jury found the market value of the remaining 126.6 acres immediately before the condemnation and the construction of said line was $18,990 and that its value immediately thereafter was $15,951.60. The court rendered judgment thereon for the Etheredges for $3,038.40. The electric company has appealed.

Appellant's points are, in substance, that the court erred in rendering judgment for the amount of damages found by the jury in answer to issues 3 and 4 because there was no evidence to sustain said findings, the evidence was insufficient to sustain said findings and said answers were against the overwhelming weight and preponderance of the evidence, and, further, that the court erred in overruling plaintiff's motion for a mistrial because the judgment, based upon the answers to issues 3 and 4, is excessive, and because the court erred in overruling objections to the argument of appellee's counsel.

There was evidence from qualified witnesses to the effect that, in their opinion, the difference between the market value of the remaining land was as much, or more, than the jury found. They gave substantial reasons to support such conclusions. For example, Mr. Green testified he had been engaged in buying and selling farms in Dawson County since the early thirties; that he was acquainted with the Etheredge farm before the taking of the easement and that as a result thereof the remainder was reduced in value 15%, or $22.50 per acre. He said the erection of the line across the farm created a weed hazard; that Johnson grass would grow around the electric company's poles and blow over the farm; that you would have to work almost constantly to keep weeds out and this work had to be done by hand because you could not get modern farm machinery close to the poles; that in working around the poles farm hands were likely to wreck farming equipment; that you couldn't "deep break" around the poles and, if you didn't, the soil would blow. The farm is sandy land and he said that if the sand around the poles blew at the right stage it could blow out the entire crop in a short time; that the line would interfere with dusting the crop by airplane because you couldn't get poison to the crop around the lines; that it would take more poison and more time and you would get poorer results; that the presence of the line would create an ugly spot on the land and hurt its general appearance; that there was danger of getting electrocuted as a result of the high voltage lines angling across the farm and that a prospective purchaser would naturally look at it and pay less for the farm; that the line angling across the farm interfered with plowing; that you would have to plow up to a pole and have a turnrow on each side, or go around the pole; that if you left a space the weeds would grow and catch sand; that sand would pile up and blow; that with the poles on it, you couldn't plow straight across the land and you would likely have the sand blowing and part of the crop destroyed; that, because of its presence on the farm, the cost for farm labor would increase; that you could no longer use a one way guide and plow the land without a plow hand and you could not get around the poles with deep breaking equipment. There was testimony that the lines angling across the farm made it look like a "sore thumb"; that it affected the way you could run your rows with the slant of the land, making it difficult to conserve water. There was much testimony of a similar nature.

■ It has been held that inconvience in cultivation caused by condemnation is an element that may be considered in assessing damages. Wilbarger County v. Hall, Tex.Com.App., 55 S.W.2d 797. It has been held that inconvenience suffered by the land owner because his fields were cut in two may be considered in determining diminution of the market value of the remaining land. Wolsch v. State, Tex.Civ.App., 77 S.W.2d 1062. It has been held that the fact that a power line strung across a farm is unsightly is a proper element of damages. Texas Power & Light Co. v. Jones, Tex.Civ.App., 293 S.W. 885, 886. The fact that an electric line interfered with the land owner's radio reception has been held properly considered as evidence of a reduced market value. Texas Power & Light Co. v. Hering, Tex.Civ.App., 224 S.W.2d 191. In Southwestern Public Service Co. v. Goodwine, Tex.Civ.App., 228 S.W.2d 925 (RNRE), it was held that where the entire tract was cultivated and used as a unit and, in order to cultivate crops on the portion over which electric transmission lines were erected, it was necessary to stop farm machinery and pass around poles with difficulty, this might be considered in determining the damages to the remainder. In Texas Electric Service Co. v. Wells, 8 S.W.2d 705, 708, (Writ Ref.), it was correctly held that in determining the amount of damages a jury could properly consider the fact that a power line right of way separated one corner of the tract from another, leaving that corner in a triangular shape. In the instant case we think that one of the most substantial elements of damages shown is that this high voltage line, with its poles, angles across this small farm from near its southwest corner towards its northeast corner. In Brazos River Conservation and Reclamation Dist. v. Costello, Tex.Civ.App., 169 S.W.2d 977 (Ref. w. m.), we held that in such a case as this the parties had a right to introduce evidence of anything which would tend to affect the value of the land in the eyes of a prospective purchaser, or tend to make it more or less valuable to its owner.

We have carefully considered the entire statement of facts and the authorities cited by appellant in its able brief. We are forced to the conclusion that said points relative to the sufficiency of the evidence to sustain the answers to issues 3 and 4 must be overruled. The points asserting that the court erred in overruling plaintiff's objection to the argument of defendant's counsel and in overruling plaintiff's motion for a mistrial, because of such argument, are overruled. The bill, as qualified by the trial court, does not show error. The judgment is affirmed.