SOUTHWESTERN PUBLIC SERVICE COM-
PANY, a Corporation, Appellant,

v.

William Clay SPURLOCK et al., Appellees.

SOUTHWESTERN PUBLIC SERVICE COM-
PANY, a Corporation, Appellant,

v.

Joyce Gilbert SPURLOCK et al., Appellees.

Nos. 7340, 7341.

Court of Civil Appeals of Texas.

Amarillo.

March 30, 1964.

Rehearing Denied April 27, 1964.

awards of the special commissioners and the consolidated cases were tried in the County Court to a jury. The only disputed issue was that of damages. One tract, designated the Clay Spurlock land, contained approximately 320 acres; the other tract, designated the Cline Gilbert land, contained approximately 960 acres. The 30 foot strip condemned on the Clay Spurlock land contained 3.629 acres, and the condemned area on the Cline Gilbert land contained 1.822 acres. The jury found the 3.629 acre strip to be worth $725.80, and the 1.822 acre strip to be worth $273.30. The jury further found the remaining portion of the Clay Spurlock land to be worth $63,274.20 immediately before the condemnation and $60,110.49 immediately after the condemnation. The jury found the remaining portion of the Cline Gilbert land was worth $223,726.70 immediately before the condemnation and $222,135.81 immediately after the condemnation. Judgments were entered on the jury's verdicts awarding damages of $3,889.51 for the Clay Spurlock land and $1,864.19 for the Cline Gilbert land. From these judgments Southwestern Public Service Company has perfected these appeals.

The record shows the utility company had erected its power lines across the two tracts at the time of the trial. The lines are H-Frame type of construction, each consisting of two poles spaced 12½ feet apart with cross arms from which insulators are extended to carry the conductors or power lines. The poles are spaced from 600 to 700 feet apart. The 65 foot poles are set 8½ feet in the ground with the conductors placed approximately 43 feet above the surface of the ground with the lowest point of clearance approximately 28½ feet above the surface. Eight H-Frames were placed on the Clay Spurlock land and four on the Cline Gilbert land. The usual rights of ingress and egress were given the condemnors for the purposes of constructing, maintaining and reconstructing the transmission lines.

Appellant does not complain of the value placed on the 3.629 and 1.822 acre easement

Stone & Stone, Amarillo, Lovell & Lyle, Dumas, for appellant.

Richards & Ferguson, Dalhart, for appellees.

DENTON, Chief Justice.

These two suits, consolidated for trial with one statement of facts, are condemnation proceedings. The suits were filed by Southwestern Public Service Company, a public utility corporation with power of eminent domain, against William Clay Spurlock, the owner, and Harvey Spurlock, the tenant, of one tract; and against Joyce Gilbert Spurlock and husband, William Clay Spurlock, the latter as administrator of the Estate of Cline Gilbert, the owners, for the purpose of condemning an easement 30 feet wide for an electrical transmission line over and across the two tracts of land. Appellees, the condemnees, appealed from the

strip or the value placed on the remainder of appellees' two tracts of land immediately before the condemnation. The complaint is there is no evidence and insufficient evidence to sustain the jury findings as to the value of the remainder of the two tracts immediately after the condemnation. It is appellant's position that the testimony of witness Hodge, an expert witness called by appellees, does not support the jury's findings as to market value of the remainder after the taking. This contention is based on the premise Hodge did not properly appraise various parts of the remaining land in accordance with their respective relationships to the condemned easement. Under the facts and circumstances of these cases we think appellant's contention is too restrictive and is not supported by the authorities. Each of the two tracts here involved were operated as a unit. Although both tracts contained pasture land as well as cultivated land, it was uncontradicted that the highest and best use of the premises is irrigated, cultivated land.

■ It is well settled that in the taking by condemnation of an easement strip across a tract of land, damages to the remaining portion of the tract is determined by ascertaining the difference between the market value of the remaining portion of the tract immediately before and immediately after the taking. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979; Texas Electric Service Co. v. Merket, (Tex.Civ. App.), 300 S.W.2d 167. As held in State v. Carpenter, supra, the issue of depreciated market value is largely a matter of opinion evidence, and a very wide range of factors may be legitimately taken into consideration by qualified witnesses on the foundation of their opinion. See also Texas Pipe Line Co. v. Hunt, 149 Tex. 33, 228 S.W. 2d 151. It has further been held that in order to enable a jury to determine the depreciation of the remainder, the parties have the right to introduce evidence of anything which would tend to affect the value of the land in the eyes of a prospective purchaser or tend to make it more or less valuable to the owner. Brazos River Conservation & Reclamation Dist. v. Costello, (Tex.Civ.App.), 169 S.W.2d 977, (Refused, WM); Texas Electric Service Co. v. Etheredge, (Tex.Civ.App.), 324 S.W.2d 322.

■ Appellees' expert witness, whose qualifications were not questioned, testified to a difference in the market value of each tract of land in question immediately before and immediately after the condemnation of the easement strips. Each of these amounts were greater than those found by the jury. Factors which Hodge testified he considered in determining the depreciated market value included: the right of the condemnor of ingress and egress onto the land to maintain and repair the power lines and equipment; the easement separated a portion of the land from the existing irrigation wells on one of the tracts; it is more inconvenient and more expensive to cultivate appellees' land after the condemnation because of the presence of the large poles; it is difficult to operate large farm machinery near these structures; the presence of the power line would interfere with the dusting of crops by plane; the use of trucks on the premises by the condemnor would affect the irrigation plans of the appellees; real and apparent damage from the high voltage lines across the two tracts; additional expense to keep the weeds down in the right-of-way; the presence of trucks and cars on the land would attract the cattle "thinking they will get feed. That results in a walking off of weight off of the animal"; and the fact keys to the gates surrounding the premises were provided to both the condemnor and condemnee, and could result in keys getting into the possession of unauthorized persons. Hodge declared these factors, and others not listed here, were considered by him in determining the depreciation of the land, and that such factors would influence prospective purchasers. Other witnesses, including farmers living in the area, substantiated much of this testimony. These elements of damages have been held to be properly considered in assessing damages to the re-

mainder. Texas Electric Service Co. v. Etheredge, supra; Texas Electric Service Co. v. Merket, supra; Wilbarger County v. Hall, (Tex.Com.App.), 55 S.W.2d 797; Southwestern Public Service Co. v. Goodwine, (Tex.Civ.App.), 228 S.W.2d 925, (Refused, NRE); Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191. We conclude there was sufficient evidence to support the jury's findings as to the value of the remainder of the two tracts immediately after the condemnation

The judgment of the trial court is affirmed.

Affirmed.