**SOUTH TEXAS ELECTRIC COOPERA-TIVE, INC., Appellant,**

v.

**V. A. ERMIS and wife, Terezie Ermis, Appellees.**

**No. 116.**

Court of Civil Appeals of Texas.

Corpus Christi.

Nov. 4, 1965.

Fisher Alsup, Corpus Christi, for appellant.

Roger Butler, of Butler, Schraub, Schafer & Gandy, Robstown and Corpus Christi, for appellees.

NYE, Justice.

This was a proceeding for condemnation of an easement for an electric transmission line. South Texas Electric Cooperative, Inc., appellant herein, condemned a fifty-foot easement over and across the farm of V. A. Ermis and wife, for the purpose of erecting, operating and maintaining an electrical transmission line. The case was tried in the County Court to a jury. The only disputed issue before this Court on appeal concerns the damages to the remainder of the land not taken by the easement condemned.

Ermis owned an 88.23 acre farm less than a mile northwest of the city limits of Robstown in Nueces County, Texas. The farm was rectangular in shape, being an average of about 3700 feet long north to south and 1035 feet wide from east to west. The appellant condemned a fifty-foot easement diagonally across the tract from northwest to southeast, it being 3825 feet and containing 4.3 acres of land. The jury answered Special Issues No. 1 and No. 2, finding that the easement strip taken to be of the value of $500.00 per average acre before the taking and the value of the fifty-foot easement after the taking to be $250.00 per average acre. This resulted in an award in the amount of $1075.00 for Ermis. No dispute is made over this amount or these findings. The jury also found in answer to Special Issue No. 3 that the value of the

per average acre of the remaining tract of land, exclusive of the easement immediately before the taking, to be $500.00. In answer to Special Issue No. 4, the jury found the value per average acre of the remaining tract of land, exclusive of the easement taken, after the taking, to be $450.00. Calculated on the exact number of acres not taken at $50.00 per acre the amount was $4196.50. The total amount awarded to Ermis, as set forth in the judgment based on the jury verdict, was $5271.50.

The record shows that the utility company had erected its power transmission lines across the farm at the time of the trial. The line consisted of eight single poles approximately 450 feet apart, eighteen inches in diameter, approximately forty-six feet high, with two cross arms near the top of each pole. The three wires were suspended from these cross arms in the area, a distance of not less than thirty-two feet from the ground. The usual rights of ingress and egress were given the condemnors for the purpose of constructing, maintaining and operating the transmission lines. The complaint in appellant's first three points is that there is no evidence or insufficient evidence to sustain the jury findings regarding the damage to the remainder of appellee Ermis's property, and that the trial court erred in not disregarding the answers to Special Issues No. 3 and No. 4.

Appellant's contention is that the trial court erred in not granting judgment based on the jury's answer to Special Issues No. 1 and No. 2 (relative to the actual easement taken). Appellant reasons that there was no evidence or insufficient evidence as to how or why the remainder of the farm would be damaged, citing, Texas Electric Service Company v. Vest, Tex.Civ.App., 310 S.W.2d 733 (1958), ref., n. r. e., and Tennessee Gas & Transmission Co. v. Zirjacks, Tex.Civ.App., 244 S.W.2d 837 (1951) writ dism. In the Earl Vest case, concerning the damage to the remainder of thirty-six sections of land after the taking of an easement for a highline, the Court held, that there was no reasonable informa-tion concerning the damages to the remainder to substantiate the market value of the testimony of the condemnee's witness. In the Zirjacks case, again the Court held that the judgment must fall for the reason that the evidence does not support the findings of the jury. These two cases are distinguishable from this case by the facts.

Ermis's farm at one point was only 492 feet from the city limits of Robstown, Texas. It was very good heavy black land, well drained, and probably as good a land as there is in that area for farming purposes. It was a long, narrow strip of land, being approximately four times as long as it was wide. The electric transmission line ran lengthwise and catty-cornered. On the north side is a well improved county road and on the south side is a drainage ditch which carries off surface water. There was no dispute between the two appraisers for the respective parties that the land was very valuable. Appellees' expert witness was well qualified, having been in the real estate and farming business for eighteen years. He qualified fully as an expert, testifying that he was an approved appraiser for various institutions, including the State Highway Department. He tested his qualifications by showing his knowledge of the various different approaches in arriving at market value and testified as to numerous comparable sales in the area around Robstown. He testified that Ermis's land was adapted for the development into a nice subdivision; that a sewer plant was near the northwest corner of the property and that the land's proximity to the town would make the property appreciate in value in the future. However, although the land was adaptable as a subdivision, the witness testified that the highest and best use at the time of the taking was for farming. The particular purposes to which land may be devoted as well as others to which it is adapted may be shown in evidence to enable the court and jury to determine its market value. The market value of property includes its value for any use to which it may be put. State v. Carpenter, 126 Tex. 604,

89 S.W.2d 194, Comm. of App. 1936, opinion adopted by Supreme Court.

There was other testimony as to depreciation of the value of the remainder. The highline would interfere with radio reception and there would be fouling of surrounding lands by weeds and trash collecting around poles and spreading over the land. The witness testified that from a farm standpoint the highline does not run with rows but runs at an angle; that the highline would hinder airplane dusting and that this was important to a farmer who must disinfect his land on occasions of emergency after a heavy rain and infestation of crops. He stated unequivocally that the land had suffered severance damage to each and every acre of the part not taken. He compared such severance damages to the hypothetical farm without an electrical transmission line, comparing it to one with a highline. He stated that if the price for one tract with a highline was the same as another tract without it, a person would just not buy a tract with the highline. On cross-examination he admitted that a crop dusting airplane could operate on Ermis's farm. Appellee Ermis's expert witness concluded that the value of land prior to the taking was $600.00 an acre and that the market value of the remaining portion of the tract immediately after the taking was $525.00.

Appellant's expert witness testified that there was no severance damage whatsoever; that the part not taken before and immediately after the taking would have the same value.

■ Damages to the remaining portion of a tract is determined by ascertaining the difference between the market value of the remaining portion of the tract immediately before and immediately after the taking. State v. Carpenter, Sup.Ct., supra. The issue of depreciated market value is largely a matter of opinion evidence and a very wide range of factors may be considered legitimately by qualified witnesses as a foundation for their opinion. Texas Pipe Line Co. v. Hunt, 149 Tex. 33, 228 S.W.2d

151. The parties have the right to introduce evidence of anything which would tend to affect the value of the land in the eyes of a prospective purchaser which tends to make it more or less valuable to the owner. These factors may be considered in determining the depreciation to the remainder by the jury. Texas Electric Service Co. v. Etheredge, Tex.Civ.App., 324 S.W.2d 322; Brazos River Conservation & Reclamation Dist. v. Costello, Tex.Civ.App., 169 S.W.2d 977, ref. w. o. n.

■ We hold that there is sufficient evidence in the record regarding damage to the remainder of appellees' property. Southwestern Public Service Co. v. Spurlock, Tex.Civ.App., 378 S.W.2d 134 (1964); Texas Pipe Line Co. v. Hunt, Sup.Ct., supra; Texas Electric Service Company v. Merket, Tex.Civ.App., 300 S.W.2d 167 (1957); Tennessee Gas Transmission Co. v. Dishman, Tex.Civ.App., 303 S.W.2d 471 (1957), ref., n. r. e.; West Texas Utilities Company v. Irvin, 161 Tex. 5, 336 S.W.2d 609, Sup.Ct.1960. Appellant's points one through three are overruled.

■ Appellant's fourth point complains that the jury's findings to special issues were excessive; that the burden of proof to establish damage to the remainder, if any, was on the appellees. Appellees' expert witness testified that the value of the remainder, before the taking, exclusive of the strip taken, was $600.00 per average acre, and that the total worth of such land, exclusive of the strip taken, was $50,370.00. He testified that after the taking of the strip condemned for the use as an electric power line easement, that the value of the land was worth $525.00 per average acre, or $44,073.75, as the market value of the remaining land after the taking. This difference would result in damage to the remainder of $75.00 per average acre or a total of $6294.75. The jury found the value of the land before the taking at $500.00 per average acre and $450.00 per average acre after the severance. The effect was damages to the remainder of $50.00 per average

acre, or a total of $4196.50. As held in State v. Carpenter, Sup.Ct., supra, the issue of depreciated market value is largely a matter of opinion evidence. The jury in answering the special issues and assessing the value to the land, had the benefit of expert witnesses and the testimony concerning the various elements of damages that were brought out in the testimony. The jury did not accept the highest or lowest value in arriving at their answers. Appellees' witness testified to damages of $25.00 per average acre more than was awarded by the jury. We hold that the jury's findings as to the value assessed to the remainder before and after the taking of the severed land are not excessive and are supported sufficiently by the evidence. Southwestern Public Service Co. v. Goodwine, Tex.Civ.App., 228 S.W.2d 925, ref., n. r. e.; Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191, Sup.Ct.; State v. Carpenter, supra; Texas Electric Service Co. v. Etheredge, supra; Texas Electric Service Co. v. Merket, supra; Wilbarger County v. Hall, Tex.Com.App., 55 S.W.2d 797. Appellant's point four is overruled.

■ Appellant's remaining point complains of the trial court's ruling in refusing to strike all of the testimony of Mr. Her-man Woods, relating to the damage to the remainder of the land, because such testimony consisted of mere naked opinions and abstract conclusions. Witness Wood was the expert witness for the appellees and was duly qualified and tested as an expert to give his opinion as to the reasonable market value of the appellees' land. No objection was made by the appellant to any specific question relative to the damage or market value as testified by witness Wood at the time such witness was testifying. The objection was a blanket complaint directed against all of the evidence relating to damage given by the witness, without any particularization as to any specific part thereof that was deemed harmful. The objection was made to strike the testimony after the witness had fully testified on direct, was cross-examined by appellant, and re-examined on re-direct examination. Such objection was clearly too general and too late to be considered. Wheatley v. Benson, Tex.Civ.App., 279 S.W. 911 (1926), writ dism.; Dabney v. Keene, Tex.Civ.App., 195 S.W.2d 682 (1946), ref., n. r. e.; Southern Underwriters v. Weldon, Tex.Civ.App., 142 S.W.2d 574 (1940). See McCormick & Ray, §§ 24–26, pp. 22 to 26.

Appellant's fifth point is overruled.

Judgment of the trial court is affirmed.