**BOIS D'ARC ISLAND LEVEE IMPROVEMENT DISTRICT NO. FOUR OF DALLAS AND KAUFMAN COUNTY, Appellant,**

v.

**C. D. SHEPHERD et ux., Appellees.**

**No. 819.**

Court of Civil Appeals of Texas, Tyler.

April 24, 1975.

Morgan, Shumpert, Huff, Philipps, Mosley & Co., Kurt A. Philipps, Kaufman, for appellant.

Clyde Elliott, Jr., Canton, of counsel; Elliott & Bass, Canton, Wynne & Wynne, Wills Point, Harold Hollingsworth, Kaufman, for appellees.

McKAY, Justice.

This is a condemnation suit brought by appellant Bois d'Arc Island Levee Improvement District No. 4 of Dallas and Kaufman County against appellees, C. D. Shepherd and wife. Appellant took as a permanent easement approximately 13 acres of land on the extreme lower portion of appellees' 139-acre tract. The parties stipulated that the date of taking was November 22, 1967.

The cause was tried before a jury. In response to the four special issues submitted by the court, the jury found as follows: (1) that the condemned 13-acre easement had a market value of $750.00 per acre immediately before the taking and (2) had a market value of $50.00 per acre immediately after the taking; (3) that the 126-acre remainder had a market value of $750.00 an acre immediately before the taking, and (4) had a market value of $650.00 an acre immediately after the taking. Judgment was rendered in favor of the appellee landowners for $30,448.50, which included a judgment of $21,700 based on the jury findings plus 6% interest from the date of taking, on $21,600. (One Hundred Dollars had previously been placed in the registry of the court pursuant to the findings of the Special Commissioners.)

We affirm the judgment of the trial court.

Appellant brings only two points. In one, it maintains that the trial court erred in overruling the motion for new trial because there is no evidence to support the jury's answer to Special Issues 2 and 4 and in its other point appellant maintains that there is insufficient evidence of probative value to support the jury's answer to Special Issues 2 and 4. In Special Issue 2, the jury was asked to find the market value per acre of the condemned 13-acre easement immediately after the taking. In Special Issue 4, the jury was asked to find the market value per acre of the 126-acre remainder immediately after the taking. Appellant argues that there is insufficient competent evidence primarily because the testimony of the witnesses called by appellees was speculative and not based on reasonable probabilities.

When the contention is made that there is no evidence of probative force to support a finding by the trier of facts, the appellate court must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.1965).

When the contention is made that evidence is insufficient to support the jury findings, a court of civil appeals must examine all of the evidence and reverse and remand for a new trial if it concludes that the evidence is factually insufficient to support the findings of a vital fact. See Calvert, "No Evidence and Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361, 366 (1960).

The condemnation proceedings were for the purpose of deepening the channel of the East Fork of the Trinity River in an area known as Parsons Slough. As a basis for their valuation of the 13-acre easement and 126-acre remainder before the taking, expert witnesses called by appellees, testified to sales of comparable nearby property. The jury's findings in regard to the valuation of the property before the taking are not questioned.

The following chart shows the testimony of the witnesses on values before and after the taking and also the values set by the jury:

| WITNESS | 13 ACRE EASEMENT | | 126 ACRE REMAINDER | |
|---|---|---|---|---|
| | BEFORE | AFTER | BEFORE | AFTER |
| Ferguson | $700 per acre | $25 per acre | $700 per acre | $550 per acre |
| Robinson | $800 per acre | $25 per acre | $800 per acre | $490 per acre |
| Walling | $150 per acre | $200 per acre | $300 per acre | $300 per acre |
| Akin | $150 per acre | $300 per acre | $300 per acre | $300 per acre |
| Shepherd | $1000 per acre | $10 per acre | $1000 per acre | $500 per acre |
| Godwin | $800 per acre | $50 per acre | $800 per acre | $675 per acre |
| | Issue No. 1 | Issue No. 2 | Issue No. 3 | Issue No. 4 |
| VERDICT | $750 per acre | $50 per acre | $750 per acre | $650 per acre |

In regard to Special Issue 2, Ferguson, who qualified as an expert witness, testified that the condemned 13-acre easement is a bog hole and an area grown in willows. He stated that the condemned 13-acre easement must be fenced off to keep cattle out and that it cannot be used for fishing or recreation. Although he valued the condemned 13-acre easement at $25.00 an acre immediately after the taking, he said that the estimate was merely a token value because the land was no longer good for anything.

Robinson, who qualified as an expert witness, testified that the condemned 13-acre easement was worthless to appellees. Appellee Shepherd stated that after the taking, the condemned 13-acre easement was just something to hold the two pieces of land together.

In regard to Special Issue 4, witness Ferguson testified that the remaining 126 acres was damaged because appellee had to build a fence to keep his cows out of the condemned area and because appellee had to build another water tank for his cattle. He testified that the 6 acres south of the easement were damaged because water stands on about an acre or an acre and a half of it; that after the construction was performed on the condemned area, the water could not drain effectively; and that before the taking, the property was a fishing site or a beautiful scenic site with trees, but that after the taking, the property was no longer in that condition. He stated that immediately after the taking, appellees would lose the buyer who would be interested in the 126-acre remainder as a fishing area or scenic site. In addition, Ferguson said that the remainder was

damaged because the condemnor took the right of ingress and egress.

Witness Robinson testified that the 126-acre remainder was damaged because the taking of the 13-acre easement leaves 6 acres completely cut off from the rest of appellees' land and because the construction of the condemned easement area created an unsightly place out of what was originally a pretty place. He stated that the construction changed "a beautiful recreation area down near the slough to an undesirable sore eye situation down on the lower side * * *." He further testified that the remainder was damaged because the easement included the right of ingress and egress and that easements always help to destroy value. He stated that there could have been a better construction job and that the condemnor had not kept its construction work up too well; that there is approximately an acre of ground standing in water that does not drain out; that appellees had to build a fence to keep their cattle out of the bog; and that appellees had to dig a pond to provide water for their cattle. Robinson further testified that in his opinion before the taking the highest and best use of the property was either for subdivision or for a private recreation area, but that after the taking the property was not suitable for either use.

Appellee Shepherd testified that he had a stock pond built; that he built a fence along the easement; that because of the easement, approximately an acre of the remainder is covered in water so deep that it cannot be cultivated; and that the condemnor has the right of ingress and egress on his remainder and that the condemnor has had that right for seven years before the trial.

We do not believe that the testimony of the witnesses, which we have discussed, is incompetent. In Tennessee Gas Transmission Co. v. Dishman, 303 S.W.2d 471, 478 (Tex.Civ.App.—Beaumont, 1957, writ ref'd, n. r. e.), the court quotes with approval from State v. Carpenter, 126 Tex.

604, 89 S.W.2d 194, 199, 200 (1936), the following test for admissibility of evidence in regard to the differing market values of the remainder before and after the taking:

" ' * * * the parties would have the right to introduce evidence of everything that would tend to affect the value of the land, in the estimation of a proposed purchaser, or that would tend to make it more or less valuable to the present owner, such as the shape in which the tract will be left; the increased amount of fencing, if any, that will be required; the increased expenditures made necessary to provide water; the added facilities, if any, provided for travel to the owner of the land.

*    *    *    *    *    *

" 'Generally, it may be said that it is proper as touching the matter of the value and depreciation in value to admit evidence upon all such matters as suitability and adaptability, surroundings, conditions before and after, and all circumstances which tend to increase or diminish the present market value. Evidence should be excluded relating to remote, speculative, and conjectural uses, as well as injuries, which are not reflected in the present market value of the property.' "

The cost of additional fencing, establishing water places, and other items of similar nature necessitated by the construction of the easement do not constitute a measure of damage and are not recoverable as distinct items of damage. However, evidence of this nature is admissible, and is entitled to be accorded its proper probative force in determining whether the tract of land as a whole has been damaged. State v. Carpenter, supra, p. 198. The issue of depreciated market value is largely a matter of opinion evidence and a wide range of factors may be considered by qualified witnesses as a foundation for their opinion. South Texas Electric Cooperative, Inc. v. Ermis, 396 S.W.2d 955, 958 (Tex.Civ.App.—Corpus Christi, 1965, no writ); Texas Pipe Line

Co. v. Hunt, 149 Tex. 33, 228 S.W.2d 151, 155–56 (Tex.1950).

■ After considering only the evidence and inferences tending to support the findings and disregarding all evidence and inferences to the contrary, we believe that there is evidence of probative force to support the jury's answers to Special Issues 2 and 4.

After considering all of the evidence, we do not believe that the evidence is factually insufficient to support the jury's answers to Special Issues 2 and 4. Appellant's points are overruled.

The judgment of the trial court is affirmed.