STATE of Texas and City
of Austin, Petitioners,

v.

CENTENNIAL MORTGAGE CORPORATION, Successor in Interest to Grand Central Station Shopping Center, Ltd., Respondent.

No. D–3773.

Supreme Court of Texas.

Nov. 24, 1993.

Rehearing Overruled Feb. 2, 1994.

Diana L. Granger, John J. Greene, Austin, for petitioners.

Susan Vincent McClish, R. Kemp Kasling, Austin, for respondent.

PER CURIAM.

This case arises out of the condemnation of part of a commercial tract in order to convert U.S. Highway 183 in Austin into an elevated, controlled-access freeway. The project is described more completely in *State v. Schmidt,* 867 S.W.2d 769 (Tex.1993). Like *Schmidt,* this case involves the measure of damages due a landowner, not for the strip of land actually taken, but for a loss in market value of the remainder due to decreased accessibility and visibility, circuity of travel, and interim construction inconvenience—all factors held unrecoverable as a rule in *Schmidt.* Unlike *Schmidt,* however, this case involves claims for damages based on other factors,

---

including the need to replace detention ponds and the loss of a number of parking spaces. For this reason, we reverse in part the judgment of the lower courts and remand this action for new trial in accord with our opinion in *Schmidt*.

The State of Texas and the City of Austin brought suit to condemn a 10,433–square-foot strip of land from a 9.2–acre tract located at the corner of Peyton Gin and U.S. Highway 183, improved with a 109,000–square-foot shopping center, and owned by Centennial Mortgage Corporation, as successor in interest to Grand Central Station Shopping Center. The award for the strip taken is no longer in dispute. Centennial put on evidence to show the fair market value of the whole property before the condemnation, and the fair market value of the remainder, considering the effects of the condemnation. Its experts testified that this decrease in fair market value reflected the attributes of the remainder property that a would-be purchaser would consider, including the cost to cure the lost detention ponds, the decreased visibility, the decreased accessibility, the increased risk of owning the property, the fact that the property would be subject to three to five years of construction and would, at the end, be adjacent to an elevated, limited-access freeway. The State unsuccessfully objected to the admission of this evidence. The jury found that the fair market value of strip taken was $162,600, and the decrease in fair market value of the remainder was $1,480,000. After subtracting the amount previously paid based on the award of the special commissioners, $110,078, the trial court rendered judgment for $1,532,522, plus interest. The court of appeals affirmed. 867 S.W.2d 769.

The State contends that the admission of evidence of damages held noncompensable in *Schmidt* was error, that this inadmissible evidence was the only evidence supporting an award of damages to the remainder, and that the trial court's judgment should be reformed to delete the award of damages for the remainder. We do not agree. Unlike *Schmidt*, this case involves claims of damages which may be compensable, *viz.*, the cost of replacing detention ponds and other improvements formerly located on the condemned strip of land, and the resulting loss of parking spaces on the remainder. The parties agreed that the cost for rebuilding the ponds and replacing other items was $110,000, but do not cite us to any evidence or agreement which would establish, as a matter of law, possible damages flowing from the lost parking spaces.

The landowners may have recouped part of the initial cost of building the retention ponds, to the extent the award for the condemned strip reflected an increase in value due the construction of the ponds thereon. But even assuming that the value awarded for the strip of land included some amount for this improvement, this amount would not necessarily compensate the landowner for all out-of-pocket expenses for building or rebuilding retention ponds. Damages due to required modifications to the remainder, as a result of the condemnation, or damages due to a loss of improvements on the remainder because of the condemnation may, on a proper showing, be compensable. While the parties agreed on $110,000 as the cost of rebuilding the retention ponds, we cannot determine what further portion of damages may also be compensable.

Accordingly, a majority of the Court, without hearing oral argument, grants the application for writ of error, reverses the judgment of the court of appeals, 867 S.W.2d 382, and remands the case to the trial court for further proceedings in light of our opinion in *Schmidt*.