The STATE of Texas, Appellant,

v.

**INTERSTATE NORTHBOROUGH PARTNERSHIP, et al.,**
Appellees.

No. 14–96–01040–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 24, 1999.

Rehearing Overruled Dec. 16, 1999.

**6**

Paul Schorn, Susan Desmarais Bonnen, Walter C. Brocato, Grady Click, Austin, for appellants.

H. Dixon Montague, Billy Coe Dyer, Houston, for appellees.

Panel consists of Justices YATES, MAURICE E. AMIDEI, and ANDERSON.

## MAJORITY OPINION

LESLIE BROCK YATES, Justice.

This is an appeal from a judgment awarding Interstate Northborough Part-

nership[1] one million dollars in compensation for damages caused by the State's condemnation of a portion of Interstate Northborough Partnership's property. The State brings seven points of error. We reverse and remand.

## Background

The State filed a condemnation suit in 1991 to acquire property owned by Interstate Northborough Partnership ("INP") located at the corner of Interstate Highway 45 ("I-45") and Meadowfern Drive. The acquisition was necessary for widening I-45 and its associated frontage road. INP's property is a 4.8 acre tract improved with an eight-story office building, a surface parking lot in front, and a parking garage in the rear. The property acquired consists of a strip of land approximately 0.365 acres. Before the acquisition, the office building was set back 96 feet from the frontage road. After the acquisition, the office building was 22.5 feet from the frontage road. The acquisition shortened the length of two driveways connecting the front parking lot and garage with the frontage road and caused the loss of parking spaces in the front surface lot.

The case went to the jury on a single issue: the difference in the market value of INP's property immediately before the State's taking and the market value of the remainder property immediately after the taking. The jury answered $1 million and the trial court entered judgment on the verdict.

In this appeal, the State challenges the admission of evidence regarding damages caused by: (1) diminished access to the property; (2) increased proximity to the roadway; (3) highway construction in the area; and (4) increased noise. The State also complains about the trial court's exclusion of evidence offered by the State regarding the effect of highway proximity on occupancy and rental rates. Additionally, the State alleges the trial court erred in allowing their motion for new trial to be overruled by operation of law and in granting INP's motion for new trial after a previous verdict.

## Impairment of Access

■ The State's first point of error, concerning diminished access, includes three complaints.[2] The State contends the trial court erred by (1) finding a material and substantial impairment of access, (2) admitting evidence regarding damages due to diminished access to the property, and (3) refusing to instruct the jury that diminished access was not compensable.

The Texas Constitution provides in part: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made...." TEX. CONST. Art. I, § 17 (1997). Early in the State's history, the Texas Supreme Court held that, when part of a person's property is taken, the State constitution requires adequate compensation both for the part taken and any severance damages to the remainder. *See State*

1. The easement holder and lienholders were also defendants in the suit, but the only appellee who has filed a brief in this appeal is Interstate Northborough Partnership.

2. A point of error that embraces more than one specific ground of error is multifarious. *See City of San Antonio v. Rodriguez*, 856 S.W.2d 552, 555 n. 2 (Tex.App.-San Antonio 1993, writ denied) (citing *Clancy v. Zale Corp.*, 705 S.W.2d 820, 823 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). Courts may disregard and refuse to review multifarious points of error. *Id. See also Owens–Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 570 (Tex.App.-Hous-

ton [1st dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex.1998); *Citizens Bldg., Inc. v. Azios*, 590 S.W.2d 569, 572 (Tex.Civ.App.-Houston [14th Dist.] 1979, writ ref'd n.r.e.); *Wheat v. Delcourt*, 708 S.W.2d 897, 901 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.). A court may, however, consider multifarious points of error if it can determine, with reasonable certainty, the alleged error about which complaint is made. *See Thornton v. D.F.W. Christian Television, Inc.*, 925 S.W.2d 17, 22–23 (Tex.App.-Dallas 1995), *rev'd on other grounds*, 933 S.W.2d 488 (Tex.1996).

*v. Schmidt,* 867 S.W.2d 769, 772 (Tex.1993)(citing *Buffalo Bayou, B. & Colo. R.R. Co. v. Ferris,* 26 Tex. 588, 603 (1863). The supreme court determined that the proper rule for ascertaining damages was the difference between the market value of the remainder tract immediately before the taking and the market value of the remainder tract immediately after the taking, considering the nature of the improvement, and the use to which the land taken is to be put. *See Schmidt,* 867 S.W.2d at 772 (citing *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194, 197–198 (1936).

■ Section 21.042(c) of the Property Code requires consideration of "the effect of the condemnation on the value of the property owner's remaining property." TEX. PROP.CODE ANN. § 21.042(c) (Vernon 1984). Thus, the statute allows recovery for damages from the taking of property, but not for the effect of the State's change in the use of the roadway for which the property was taken. *See Schmidt,* 867 S.W.2d at 777–78. Whether property has been "damaged" under the constitution is a question of law. *See State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996). Likewise, whether there has been a material and substantial impairment of access is a question of law and is subject to de novo review. *See id.* The trial court must make this determination prior to trial and control the admission of evidence accordingly. *See id.*[3]

In the instant case, the State filed a motion to exclude damages relating to increased noise, increased proximity to the roadway, and diminished access. The trial court held a hearing on this motion and heard evidence from several witnesses. Following the hearing, the trial court found as a matter of law there had been a material and substantial impairment of access. Accordingly, the court denied the State's motion and allowed the evidence to go to the jury.

The seminal case on impaired access damages is *DuPuy v. City of Waco,* 396 S.W.2d 103 (Tex.1965). In *DuPuy,* the court recognized that a landowner is entitled to compensation when a public improvement destroys *all reasonable access* thereby damaging the property. *See id.* at 109. *DuPuy* also recognized that no right to compensation extends to a property owner who has reasonable access to his property after the construction of a public improvement because the benefits of private ownership have been preserved. *See id.*

■ If suitable access remains, damages for diminishment of means of access is not compensable. *See Archenhold Auto. Supply Co. v. City of Waco,* 396 S.W.2d 111, 114 (Tex.1965)(denying compensation for diminished access when one means of access was completely impaired while another remained open). With a proper showing, however, a landowner may recover damages for impaired access if he can show his damage is special, rather than community. *See State v. Centennial Mortgage Corp.,* 867 S.W.2d 783, 784 (Tex.1993).

In support of its damages claim, INP offered the testimony of Vernon Henry, a city planning consultant, Kevin Wyatt, a real estate broker specializing in office building leasing, and David Lewis, a real estate appraiser. Henry testified that he had been retained to evaluate the impact of the taking on the building, parking, access, and general setting. Henry concluded the impact was severe. Henry tes-

---

3. This court addressed the State's challenge to another trial court's finding of a material and substantial impairment of access in *The State of Texas v. Northborough Center, Inc.,* 987 S.W.2d 187 (Tex.App.—Houston [14th Dist.] 1999, n.w.h.). In *Northborough Center,* the State constructed an exit ramp directly in front of Northborough's property, violating both the State's minimum design standards and sound engineering judgment. *See id.* at 190–91. The location of this ramp rendered Northborough's driveways unsafe and, unlike the INP building, the Northborough building had no access locations other than the unsafe driveways. *See id.* at 191. Accordingly, we upheld the court's findings of a material and substantial impairment of access. *See id.* at 193.

tified that the building has two driveways connecting the front surface lot and the parking garage with Meadowfern (a street crossing the frontage road at the north end of the property) and two driveways connecting these facilities with the freeway frontage road. Before the taking, the throat length of the driveways on the frontage road was 71 feet, which Henry testified gave sufficient "stacking room" for vehicles to enter and exit the property.

Henry concluded that, after the taking, the two driveways to the frontage road were unsafe. In reaching this conclusion, Henry acknowledged he retained a traffic consultant who found that most of the traffic on the frontage road exceeded the speed limit and that the throat length of the driveways, reduced to less than one car length, was unsafe and insufficient. Henry recommended closure of the driveway to the front surface lot because the shortened throat length of the driveway, together with the impaired view of oncoming traffic caused by the State's construction of a retaining wall on the property, caused the driveway to be unsafe.

Henry also recommended renovations to the parking garage to increase the throat length of the driveway to the parking garage. Henry recommended that part of the garage be demolished to return the throat length of the driveway to a safe length and to maintain adequate circulation around the garage. Henry did not recommend removal of the retaining walls erected by the State because these were important to protect the building due to its increased proximity to the roadway. Henry calculated the cost of the recommended renovations to be $273,396.

David Lewis testified he was retained to estimate the value of the property before the taking and the value of the property after the taking. Lewis determined that the value of the building before the taking

was $7,050,000.[4] Lewis observed that the good attributes of the building before the taking included its setback from the road, its location at an intersection, its 8–story atrium design, the presence of a bank in the lobby, and the Greenspoint neighborhood. Lewis testified that, after the taking, the building was not the same, there was a perception it was unsafe due to its proximity to the frontage road, the driveways off the frontage road did not function properly, and the landscaping was gone. In estimating the value of the building after the taking, Lewis included the costs to cure the driveways testified to by Vernon Henry, but he did not believe these cures to the driveways returned the building to its former condition.

Lewis determined that the subject property was competitive with three buildings in the area before the taking. None of these buildings used by Lewis as comparable buildings had been affected by the State's taking. Lewis stated that in 1990, the subject building had a rental rate of $9.50 per square food and was 66% occupied. The three buildings used as comparables ranged in rental rates from $9.75–10.50 per square foot and their occupancy rates ranged from 63–85%. However, after the taking, Lewis testified the subject building has continued to lose occupancy while the other buildings have increased in occupancy. In 1994, Lewis found that the rental rate for the subject building was $10.50 per square foot and the occupancy rate was 58%. The other three buildings used for comparison had rental rates in 1994 ranging from $12–13 per square foot and had occupancy rates ranging from 92–98%. Lewis determined from discussions with people in the market that the reason for the decline in occupancy in the subject building was the State's taking. Lewis believed that if there had not been a taking, the subject building would have expe-

---

4. Lewis utilized three approaches in determining value: the cost approach, the market approach, and the income approach. Each of these approaches resulted in a similar value, but Lewis stated that the income approach was most appropriate for an income-producing property and the $7,050,000 value is based on the income approach.

rienced an occupancy rate of 95%, even though he admitted the highest occupancy rate the building had ever enjoyed was 92% just after it was built in the early 1980s. Lewis concluded that the value of the building after the taking was $5,100,-155. Thus, Lewis found that the difference in the market value of the building after the taking was $1,949,845.

The State argues that Lewis's testimony was inadmissible because his calculations were based, in part, on damage due to loss of access. The State maintains that Lewis's testimony included damages caused as a result of Henry's recommendation to close one of the driveways. Because the remainder property would still have four driveways, there could be no material and substantial impairment of access.

INP argues that the above-described evidence was not inadmissible evidence of a material and substantial impairment of access that would result in permanent diminution in the market value of the remainder property. Instead, INP claims this evidence established that "the State's condemnation left the remainder Property with frontage road access that was unsafe to use; that this access problem needed to and could be cured; and evidence of the cost to cure." INP asserts that Lewis adopted Vernon Henry's cost to cure and this was the only evidence of damages for access.[5]

 We agree with INP that, although Lewis included access damages in his calculation, of damages, he only used Henry's cost to cure the driveways. We

find that the evidence presented by INP's experts concerned unsafe access, rather than a material and substantial impairment of access. Therefore, the trial court erred in finding there was a material and substantial impairment of access. Although an error in finding a material and substantial impairment of access is usually associated with the admission of inadmissible evidence of impaired access, this is not true here. In this case, the evidence offered concerned unsafe access for which damages consisted of a specified cost to cure. Evidence relating to specific curable damages, such as the damages in this case, is admissible. *See State v. Centennial Mtg. Co.*, 867 S.W.2d 783, 784 (Tex.1993). Thus, we find the trial court did not err in admitting evidence of unsafe access and the cost to cure, and we turn to the State's other complaint under point of error one.

 The State also complains about the trial court's refusal to submit the following requested instruction:

You are instructed that the denial of access to former driveways, if any, which may have resulted in a longer route of travel and increased inconvenience for purposes of ingress and egress to the subject property is not compensable as a matter of law and 'any depreciation of the remainder of the subject property due to such condition should not be included in your consideration of damages to the remainder.

 The decision whether to submit a particular instruction is reviewed for an abuse of discretion, with the crucial

5. In support of its argument that costs to cure access problems may be considered in determining the market value of remainder property, INP cites *State v. Centennial Mortgage Corp.*, 867 S.W.2d 783 (Tex.1993), *State v. Zaruba*, 418 S.W.2d 499 (Tex.1967), and *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 979 (Tex.Comm.App.1936). INP further argues that, if the State contends INP is not entitled to costs necessary to restore the property's access, the State's contention is without merit because the State offered evidence regarding the safety of the driveways and an alternative cost to cure. We agree that the cases cited by

INP support its recovery of damages to restore the driveways. Further, the State concedes liability for damages resulting from loss of parking spaces and certain reconfiguration of the driveways and parking garage. The State's own expert testified to necessary renovations with an estimated cost of approximately $117,200. In its brief to this court, the State admits it does not challenge the testimony of INP's expert estimating costs of renovations at $273,396. What the State does challenge is testimony regarding impaired access that supports INP's evidence of damages of $1.5 million.

question being whether the instruction aids the jury in answering the question. *See McReynolds v. First Office Mgmt.*, 948 S.W.2d 342, 344 (Tex.App.—Dallas 1997, no writ); *Harris v. Harris,* 765 S.W.2d 798, 801 (Tex.App.—Houston [14th Dist.] 1989, writ denied). A court has considerably more discretion in submitting instructions than it has in submitting jury questions. *See Harris,* 765 S.W.2d at 801. When the court refuses to submit a requested instruction, the question on appeal is whether the request was "reasonably necessary to enable the jury to render a proper verdict." *Plainsman Trading Co. v. Crews,* 898 S.W.2d 786, 790 (Tex.1995).

Although the requested instruction correctly states the law under *Schmidt,* 867 S.W.2d at 780, INP did not assert or prove circuity of travel and inconvenience. Instead, INP claimed and offered evidence of unsafe access. Thus, the trial court was within its discretion to determine that the requested instruction was not reasonably necessary to enable the jury to render a proper verdict. *See Plainsman Trading Co.,* 898 S.W.2d at 790. Accordingly, we find no abuse of discretion by the trial court in refusing to submit the State's requested instruction regarding diminished access. We overrule point of error one.

### Increased Proximity to Frontage Road

■ In points of error two through four, the State challenges the admission of evidence regarding damages caused by increased proximity of the roadway, construction in the area, and increased noise.[6] INP claimed damages due to the State's placement of a 3–lane, high-speed frontage road less than 1 ½ car lengths from the building. INP asserts the construction of the frontage road 22 feet from the office building devastated the appearance of the remainder property, tremendously damaging its marketablility.

■ The admission of evidence is a matter within the trial court's discretion. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). To obtain reversal on a claim of error in the admission of evidence, an appellant must show the trial court's ruling was error and that the error probably caused rendition of an improper judgment. *See* Tex.R.App. P. 44.1; *Alvarado,* 897 S.W.2d at 753. The complaining party is not required to show that "but for" the error a different judgment would necessarily have resulted. *See McCraw v. Maris,* 828 S.W.2d 756, 758 (Tex.1992). Instead, the complaining party must only show the error "probably" resulted in an improper judgment. *See id.*

■ The issue presented is whether increased proximity to the roadway, with any attendant loss of curb appeal, green space, and "buffer" zone, is a special damage for which compensation is available. If so, there was no error in admitting evidence regarding this damage. If on the other hand, this type of damage is community damage, it was error to admit this evidence because such damage is noncompensable. *See State v. Schmidt,* 867 S.W.2d 769, 780–81 (Tex.1993). The distinction between community and special damages is difficult because the definitions

---

6. INP argues the State waived any argument regarding proximity of the frontage road by proffering its own evidence in this regard and by failing to object to any evidence of proximity damages special to the remainder. We disagree that the State waived this argument. The State complained that all proximity damages were community, objected to the admission of evidence of community damages, and obtained a running objection pursuant to an agreement of the parties. Furthermore, the State does not waive its objection by offering rebuttal evidence. *State v. Priesmeyer,* 867 S.W.2d 120, 122 (Tex.App.—Austin 1993, no writ) (citing *State v. Chavers,* 454 S.W.2d 395 (Tex.1970) for the following quote: "If incompetent evidence is admitted over proper objection, the objecting party is not left to suffer injury in the instant trial and take his chances on appeal and retrial. He may defend himself without waiving his objection. He may explain or rebut or demonstrate the untruthfulness of the incompetent evidence.").

do not provide a bright line for application.[7]

In distinguishing between community and special damages, the question is whether the injury is peculiar to the property in question or is only one suffered in common with other property in the same community. *See Schmidt*, 867 S.W.2d at 780 (citing *Fort Worth Improv. Dist. No. 1. v. City of Fort Worth*, 106 Tex. 148, 158 S.W. 164 (1913)). The Texas Property Code offers the following explanation of the difference between community and special damages:

> In estimating injury or benefit [from condemnation], the special commissioners shall consider an injury or benefit that is peculiar to the property owner and that relates to the property owner's ownership, use, or enjoyment of the particular parcel of real property, but they may not consider an injury or benefit that the property owner experiences in common with the general community.

TEX. PROP.CODE ANN. § 21.042(d) (Vernon 1984).

In *Schmidt*, the supreme court reviewed previous cases regarding community and special damages and offered the following explanation:

> In each of these cases, the analysis of whether an injury or benefit was common to the community involved consideration of the location of the landowner's property, the condemnor's project, and the effects of the latter. However, the concept of community injury and benefit is not primarily geographical. It is always true that the injury or benefit from a public project increases with proximity. While injury to several landowners on the same street is not community injury simply because they all suffer alike, it is also not special injury simply because others farther away do not suffer at all. Whether an injury is community cannot be decided simply by setting

the size of the relevant area. "Community" in this context means not only where, but, more importantly, what kind. It is the nature of the injury rather than its location that is critical in determining whether it is community. 867 S.W.2d at 781.

The *Schmidt* court found that diversion of traffic, inconvenience of access, impaired visibility of ground-level buildings, and disruption caused by construction activities were consequential injuries shared by the entire area affected by the taking. *See id.* The court suggested that any of these injuries could affect a specific tract in some special, unique way, but that no special and unique injury was pled in *Schmidt*. *See id.* The court recognized that a landowner might be impacted more severely than other landowners in the area, but the court observed that this was a difference in degree and not of kind, suggesting that a more severe community injury would nonetheless remain noncompensable. *See id.*

A number of courts have included damage to the appearance of property as evidence the jury may consider in determining market value of the remainder property, but these cases involve facts very different from the instant case. *See Southwestern Public Serv. Co. v. Vanderburg*, 581 S.W.2d 239 (Tex.Civ.App.-Amarillo 1979, writ ref'd n.r.e.) (allowed testimony that installation of power lines was unsightly); *Texas Elec. Serv. Co. v. Ragle*, 559 S.W.2d 454, 458 (Tex.Civ. App.-Fort Worth 1977, writ ref'd n.r.e.) (considered evidence that construction of railroad to be used in conjunction with nuclear power plant detracted from appearance of land); *Texas Elec. Serv. Co. v. Wheeler*, 550 S.W.2d 297, 299 (Tex.Civ. App.-Fort Worth 1976), *writ denied*, 551 S.W.2d 341 (Tex.1977) (opinion on reh'g) (erection of large electric transmission poles and wires was unsightly and would depreciate market value of remainder);

---

7. The supreme court admits that the principle against awarding community damages is "far easier to articulate than to define." *Schmidt*, 867 S.W.2d at 779.

*Texas Power & Light Co. v. Trinity Valley Ranch Co.*, 395 S.W.2d 866, 867 (Tex. Civ.App.-Dallas 1965, no writ) (considered testimony that prospective purchasers consider huge electric towers and cables unsightly and devalue a parcel of property bisected by towers and power lines, thus causing a reduction in market value of tract); *Texas Elec. Serv. Co. v. Etheredge*, 324 S.W.2d 322, 323–24 (Tex.Civ. App.-Eastland 1959, no writ) (held it proper to consider fact that power lines hurt general appearance of farm).

These cases all involved easements taken on the land with construction of a railroad or large electric towers on the easements. Thus, the unsightly appearance resulted from erection of an object or device on the property. Furthermore, unsightly appearance was not the only cause of damage to market value. Where large electric towers were constructed on the property, there was testimony that these towers and cables interfered with crop dusting, impeded the ability to plow and cultivate, attracted birds which would spread weed seeds, and raised the possibility of electrocution. *See Vanderburg*, 581 S.W.2d at 245; *Wheeler*, 550 S.W.2d at 299–301; *Yater*, 494 S.W.2d at 277; *Etheredge*, 324 S.W.2d at 323; *Trinity Valley Ranch Co.*, 395 S.W.2d at 867. The case involving construction of a railroad included testimony that, in addition to detraction from the land's appearance, transportation of nuclear wastes posed a hazard, the construction of the embankment diverted the natural flow of water resulting in flooding, the placement of the railroad impeded cultivation and inconvenience in communicating between the two portions of land divided by the railroad. *Ragle*, 559 S.W.2d at 458.

The present case does not involve an easement for construction of objects on the property. Instead, INP claims the taking of a strip of land, leaving its office building closer to the frontage road, has damaged the appearance of the remainder. Whether this damage is called loss of green space, loss of buffer zone, or loss of curb appeal, it arises from increased proximity to the roadway, an injury suffered in common with other properties affected by the taking and widening of the frontage road. Although INP claims a severe injury, this only renders the injury different in degree and not different in kind from the injuries suffered by neighboring landowners. *See Felts v. Harris County*, 915 S.W.2d 482, 485 (Tex.1996)(citing *Schmidt*, 867 S.W.2d at 781; Sackman & Rohan, NICHOLS, THE LAW OF EMINENT DOMAIN § 6.08[2], at 6–130 to 6–132 (3d ed. Rev.1994)).

We hold that INP's alleged injury from increased proximity does not constitute a compensable damage for diminution in market value. The record indicates INP's experts based their opinions entirely on unsafe access and increased proximity. Vernon Henry testified about the loss of the setback of the building that gave it a buffer between the building and traffic, and the loss of landscaping and visual relief. Kevin Wyatt testified that, after the taking, the building went from the rank of an "A-" building to a "B-, high C" building because of proximity to the frontage road. Wyatt testified the aesthetics of the building had changed in that most of the landscaping is gone and the building has no curb appeal now. David Lewis testified that the market value of the building decreased because it was "not the same building," due in part to the perception that it was unsafe due to proximity to the frontage road and the loss of much of the well-landscaped grounds. All of INP's witnesses based their opinions regarding loss of value, at least in part, on the increased proximity to the road.

Because we hold that damages resulting from increased proximity to the roadway are community damages for which no recovery is allowed, the trial court erred in admitting this evidence. Where a damage award is partly based on evidence of noncompensable injuries, the State is entitled to a new trial. *State v. Munday Enterprises*, 868 S.W.2d 319, 321

(Tex.1993). Accordingly, we sustain point of error two.[8]

We need not address the State's remaining points of error because our disposition of point of error two is dispositive of this appeal.

### Conclusion

We reverse the judgment and remand the cause to the trial court for further proceedings in accordance with this court's opinion.

MAURICE E. AMIDEI, J., dissenting in separate opinion.

MAURICE E. AMIDEI, Justice, dissenting.

I respectfully dissent to the majority's holdings as to appellant's points of error two, three, and four.

In my opinion, the majority incorrectly concludes that INP's increased proximity injury is an injury suffered in common with other properties, and is not compensable. The majority does not point out the other properties that suffered in common with INP. There are none. We are considering increased proximity damages, not whether there were damages from diversion of traffic, inconvenience of access, impaired visibility of ground level buildings, and disruption caused by construction activities as was the issue in *State v. Schmidt*, 867 S.W.2d 769 (Tex.1993). The *Schmidt* case cited by the majority for its definition of community injuries is not in point, as increased proximity damages were not at issue in that case.

The increased proximity damages to INP in this case were special to INP because of the unique way the freeway was widened. The properties to the north of

INP taken by the State could not have the increased proximity problem because that land was vacant. The wide curve of the new service road cut through the land to the north, which converged with the new service road at INP's property, caused more of INP's frontage to be taken than any of the properties to the south of INP. Except for the Northborough Tower, which is immediately adjacent to INP on the south, the other properties to the south were not buildings like INP's. While these properties gave up a few feet of land, they suffered minor changes compared to INP in regard to proximity. INP's property ended up closer to the freeway than even its closest neighbor to the south, the Northborough Tower. No proximity damages similar to INP's occurred on the opposite (east) side of the freeway.

Damages may be awarded where the new proximity of the highway to the property after a taking is a factor. *State v. Sungrowth VI California, Ltd.,* 713 S.W.2d 175 (Tex.App.-Austin 1986, writ ref'd. n.r.e.); *State v. Holland,* 453 S.W.2d 871 (Tex.Civ.App.-Tyler 1970, no writ); *State v. Carswell,* 384 S.W.2d 407 (Tex.Civ.App.-Eastland 1964, no writ); *State v. Scarborough,* 383 S.W.2d 839 (Tex.Civ.App.-Texarkana 1964, writ ref'd n.r.e.). As claimed by appellee, this is especially true when the new right-of-way puts the property in violation of the City of Houston's building setback ordinance as well as the deed restrictions applicable to appellee's property.

The State's running objection to appellee's evidence of proximity damage on the grounds it was community in nature, and not special to this property, is misplaced because the testimony proved the injury not to be community in nature.

---

8. The State also claims under point of error two that the trial court erred in refusing to accept the State's requested instruction that "the closer proximity of the roadway to the subject office building was the result of the State's use of its pre-existing right-of-way and therefore is not compensable as a matter of law and any depreciation of the subject prop-

erty due to such close proximity should not be included in [the jury's] consideration of damaged [sic] to the remainder." Because we have held the trial court committed reversible error in admitting evidence of increased proximity, we need not address the claim of error in the refusal to submit this instruction.

INP did not offer evidence of increased noise or as to damages attributable to highway construction. Therefore, *Felts v. Harris County*, 915 S.W.2d 482 (Tex.1996) has no application to this case.

Appellant's points of error two, three, and four should be overruled.