The COUNTY OF BEXAR, Appellant,

v.

John L. SANTIKOS, et. al., Appellees.

No. 04–02–00101–CV.

Court of Appeals of Texas, San Antonio.

April 9, 2003.

Terry Topham,Davidson & Troilo, P.C., San Antonio, for Appellant.

Steven R. Sampson, Daniel M. Anderson, Barron, Adler & Anderson, L.L.P., Austin, Mary Belan Doggett, Linebarger Goggan Blair Pena & Sampson, L.L.P., San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, and SARAH B. DUNCAN, Justice.

Opinion by:  PAUL W. GREEN, Justice.

This appeal stems from a condemnation case.  Appellant Bexar County (County) appeals from a judgment in favor of Appellee John L. Santikos (Santikos).  The County brought an action against Santikos[1] in May of 2000 to acquire title to a parcel of land composed of .485 acres of Santikos' 27 acre plot after the parties' respective surveyors disagreed as to the extent of post-taking damages to Santikos' remaining land.  Following a hearing by a panel of Special Commissioners and a subsequent jury trial, the court entered an order entitling the County to condemn the .485 acres but awarding Santikos a total of $400,000 in return for the taking.  The County appeals, presenting this Court with four issues.

## Background

In the course of developing public highway Loop 1604, Bexar County sought to acquire a .485 acre parcel of land abutting the current right-of-way.  The parcel, designated as Parcel 61 by the County's right-of-way development plan, is part of a 27 acre tract of land owned by John Santikos.  The County, along with the Texas Department of Transportation (TxDOT), planned to develop the parcel by filling in the land, creating a ten or eleven foot high slope wall alongside the newly proposed right-of-way.

After attempts to negotiate for the sale of land failed, the County brought suit against Santikos in trial court in May of 2000, exercising its power of eminent domain by condemning Santikos' fee simple title in Parcel 61 and seeking to vest title to the same in itself.  A panel of three

---

1. The County filed a petition against Santikos, Northside Independent School District, Alamo Community College District, San Antonio River Authority, University Health System, and itself, as a taxing authority.  All defendant taxing authorities filed a waiver and acceptance of service and did not appear.  Because Santikos is the only defendant who went to trial, he is the only defendant of concern for purposes of this appeal.

Special Commissioners was appointed by the trial judge. Following a hearing, the panel awarded Santikos $53,000 as compensation for the taking and vested fee simple title in the County. Santikos filed objections to the award. Before trial, the County moved for partial summary judgment, and the trial court denied the motion.

■ At trial, expert witnesses for both parties agreed on the market value of Parcel 61. The only real dispute centered on the post-taking market value of and damage to the remainder property. Michael Cude, an engineering expert for Santikos, testified that the post-taking market value of the remainder property would be diminished due to a change in the grade of the land once the slope wall was constructed. Following the development of Parcel 61, the north 3.5 acres of the remainder property would sit approximately 10–11 feet below the surface of the right-of-way embankment. Martyn Glen, a real estate appraiser who also served as an expert for Santikos, reiterated Cude's statements, explaining that the remainder property would face problems in the form of diminished market perception and lack of access due to the steep drop in grade. Santikos, who introduced a potential "highest and best use" development plan[2] for the remainder property, claimed this grade change greatly devalued the remainder property, because the "diminished development and marketing potential, diminished market perception, unsafe access, and increased development costs" would hinder future development.

The County argued that Santikos' remainder property suffered no real damage from the taking. It focused on two lines of questioning during the course of its cross-examination of Cude and Glen. First, the County tried to prove the alleged unsafe access damages, which are compensable under the law,[3] were not applicable to this case. Second, the County attempted to demonstrate that diminished market perception was the equivalent of diminished visibility, a noncompensable damage. *State v. Schmidt,* 867 S.W.2d 769, 770 (Tex.1993). At the end of the trial, the jury awarded Santikos $400,000 (minus the $53,000 which had been deposited into the registry of the court and subsequently withdrawn by Santikos following the Special Commissioners' hearing). The County, disagreeing with the jury's findings, appealed to this Court.

### Summary Judgment

■ In its first issue, the County argues the trial court erred in failing to grant either its motion for partial summary judgment or its motion for no-evidence summary judgment. An order denying a motion for summary judgment is an interlocutory order, not a final judgment, and, as such, is not appealable. *Baker Hughes, Inc. v. Keco R. & D., Inc.,* 12 S.W.3d 1, 5 (Tex.1999); *Novak v. Stevens,* 596 S.W.2d 848, 849 (Tex.1980). When a party unsuccessfully moves for summary judgment and subsequently loses at trial on the merits, the order denying the motion is not appealable. *Gen. Res. Org., Inc. v. Deadman,* 907 S.W.2d 22, 28

---

**2.** Both of Santikos' experts testified that the "highest and best use" for the remainder would be a big box retailer development. This type of development would consist of one or two pad sites, smaller buildings like a fast food or bank franchise, at the front of the property and a big box retailer, a larger store like Wal–Mart or H.E.B., at the rear end of

the property. A factfinder may consider the highest and best use in determining the market value of property. *See Exxon Pipeline Co. v. Zwahr,* 88 S.W.3d 623, 628 (Tex.2002).

**3.** *Interstate Northborough P'ship v. State,* 66 S.W.3d 213, 224 (Tex.2001).

(Tex.App.-San Antonio 1995, writ denied). The County's motions do not fall within one of the statutory exceptions to this general rule,[4] nor does this situation mirror the exception carved by the Texas Supreme Court in *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625–26 (Tex. 1996).[5] As such the trial court's ruling is not appealable, and we overrule the County's first issue.

## Expert Testimony

■ In its second issue, the County contends the trial court abused its discretion by denying the County's motion to strike Santikos' experts' testimony regarding damage to the remaining property, specifically the issues of diminished visibility versus diminished perception and unsafe access. In order to have preserved a complaint for appellate review, the complaining party must have made a timely objection, request, or motion with sufficient specificity and obtained a ruling on that objection, request, or motion. TEX. R.APP. P. 33.1(a). In addition, a party must object each time inadmissible evidence is offered. *Richardson v. Green,* 677 S.W.2d 497, 501 (Tex.1984).

The County did not object during Santikos' direct examination of either Cude or Glen, including questions which specifically addressed the visibility versus perception distinction and the safety of access to the remainder. Instead, the County waited until the cross-examination of first Cude and then Glen, asking numerous questions regarding both visibility versus perception and unsafe access before it objected to the content of either's testimony. Because the County failed to object in a timely manner, it has waived its opportunity for appellate review of the admission of Santikos' experts' testimony. We overrule the County's second issue.

## Jury Charge

■ In its third issue, the County argues the trial court erred in allowing the jury to consider unsafe access and diminished market perception in determining the post-taking market value of the remainder property. The standard of review for error in a jury charge is abuse of discretion. *Tex. Dep't of Human Servs. v. E.B.,* 802 S.W.2d 647, 649 (Tex.1990). A trial court abuses its discretion only when it acts without reference to any guiding rules or principles. *Id.*

■ Although a trial court is afforded more discretion when submitting instructions than when submitting questions, the discretion afforded the submission is not absolute. *Wal–Mart Stores, Inc. v. Middleton,* 982 S.W.2d 468, 470 (Tex.App.-San Antonio 1998, pet. denied). Texas Rule of Civil Procedure 277 requires the trial court to submit instructions "as shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277 (Vernon Supp.2003); *Middleton,* 982 S.W.2d at 470. For an instruction to be proper, it must (1) assist the jury, (2) accurately state the law, and (3) find support in the pleadings and evidence. TEX.R. CIV. P. 277, 278 (Vernon Supp.2003); *Middleton,* 982 S.W.2d at 470.

The County contends that the trial judge erred in allowing the jury to consider damages "resulting from unsafe access

---

4. The two statutory exceptions are based on governmental immunity and free speech protections, neither of which are applicable to this situation. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5), (6) (Vernon Supp.2003).

5. The Court in *Cates* held that an appellate court may consider any grounds the movant preserved for review and on which the trial court failed to rule. 927 S.W.2d at 625–26. Here, the trial court addressed all of the County's grounds in denying both of its motions for summary judgment.

or diminished market perception of the remainder." The County focuses on these two aspects of the jury charge, claiming 1) the Texas Supreme Court's holding in *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 224 (Tex.2001), that unsafe access is a compensable damage, should not be extended to this case, and 2) diminished market perception is the same as diminished visibility, a noncompensable damage. In short, the County believes there is insufficient evidence to support a jury charge containing these two damage categories. *See* Tex.R. Civ. P. 277, 278 (Vernon Supp.2003).

## Unsafe Access

■ In support of its argument that unsafe access is inapplicable to Santikos' situation, the County cites several cases in which it was necessary to remove or restructure improvements that rested on or immediately adjacent to the portion of the land taken.[6] It then attempts to correlate the fact that the properties in these cases had improvements with the court's finding of unsafe access as compensable. For example, the County cites the case of *State v. Centennial Mortgage Corp.* for the proposition that there is an established precedent of allowing a cost to cure basis for special damages to improved properties where improvements are taken and/or must be replaced. 867 S.W.2d 783 (Tex. 1993).

The County has taken this holding out of context, attempting to show that the restructuring of *already existing* unsafe driveways is the only situation in which unsafe access will be compensable. In *Northborough*, the Texas Supreme Court held that unsafe access to the remainder caused by condemnation is a compensable damage, and the cost to cure such unsafe access is recoverable. 66 S.W.3d at 224. While it is true that, in *Northborough*, the cost to cure the unsafe access included the restructuring of already existing driveways, the court never stated that this was the only scenario in which unsafe access will be compensable. In fact, the court appears to have stated it will find either unsafe access which requires modification to the remainder **or** loss of improvements as compensable. *Id.* The *Northborough* court also kept intact the rule of law which provides that there can be no material and substantial impairment of access as a matter of law if reasonable access to the property remains after the condemnation. *Id.* at 223; *State v. Heal*, 917 S.W.2d 6, 11 (Tex.1996). This rule, read in conjunction with the unsafe access holding, does not affect compensation for unsafe access, but simply declares diminished access to be uncompensable.

The jury instruction in the case at hand mirrors the reasoning expounded in the *Northborough* decision: the trier of fact is allowed to consider unsafe access but may not consider diminished access. The instruction 1) assists the jury by explaining what factors they may and may not consider in determining damages, 2) accurately states the law as laid out in *Northborough*, and 3) finds support in the pleadings and evidence which indicate the only practical access to the Santikos property was rendered unsafe by the taking. Tex.R. Civ. P. 277, 278 (Vernon Supp.2003); *See Middleton*, 982 S.W.2d at 470. The jury instruction, therefore, is allowed under the current law, and the trial court did not abuse its discretion in submitting the unsafe access instruction to the jury.

## Diminished Market Perception

■ The County also claims the trial court erred in allowing the jurors to con-

**6.** *State v. Centennial Mortgage Corp.*, 867 S.W.2d 783 (Tex.1993); *State v. Zaruba*, 418 S.W.2d 499 (Tex.1967); *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 979, 980–981 (1936).

sider diminished market perception. The County believes this instruction was erroneous because it views diminished market perception as synonymous with diminished visibility which is a noncompensable damage. In essence, the County argues that the instruction is not supported by the evidence and, therefore, the trial court abused its discretion in wording the charge in this manner. The County, however, cites no case law supporting its theory and the evidence points in the opposite direction.

Although there is no case law regarding the compensability of diminished market perception, the Texas Supreme Court has held diminished visibility to be uncompensable. *See Schmidt*, 867 S.W.2d at 770. The court's discretion, then, rests on whether there is a discernable difference between the two types of damages.

Throughout the course of pre-trial discovery, as well at trial, Santikos' attorney and experts maintained the issue was not visibility, attempting to differentiate market perception from visibility. Although the distinction is not always well explained, the deposition of Santikos' expert, Glen, clearly illustrates the appellee's point. Glen described the interpretation of market perception as concerning the investor, buyer, or developer of the land and visibility or normal perception as pertaining to the passerby. He went on to say he was not concerned with how the passerby saw the property, but how potential developers would perceive the land as an investment.

This Court believes the testimony of Santikos' experts could be thought to support the distinction between market perception and visibility. The trial court's instruction to the jury regarding diminished market perception 1) assisted the jury by explaining what they may and may not consider in making their decision, 2) accurately states the law as far as differentiating diminished market perception from diminished visibility, the noncompensable damage, and 3) is supported by the pleadings and evidence which demonstrate that the Santikos property may have a lower fair market value (a diminished perception in the market) after the taking property is developed. Tex.R. Civ. P. 277, 278 (Vernon Supp.2003); *See Middleton*, 982 S.W.2d at 470. The trial court, therefore, did not abuse its discretion in submitting the diminished market perception instruction to the jury.

Because the trial court did not abuse its discretion in submitting either factor to the jury, we overrule the County's third issue.

### Excessive Jury Award

In its final issue, the County argues that the amount of damages awarded to Santikos is excessive. In Texas, the standard of review for an excessive damages complaint is factual sufficiency of the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex.1998); *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 847–48 (Tex.1990).

When reviewing the factual sufficiency of a jury award, we use the same standard we would use for any factual sufficiency question. *See Pope v. Moore*, 711 S.W.2d 622, 624 (Tex.1986). We must examine all of the evidence in the record, not just the evidence that supports the verdict. *Maritime Overseas Corp.*, 971 S.W.2d at 406–07. We will reverse on this basis only if the verdict is so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In factually sufficiency determinations, it is the factfinder who is the sole judge of the credibility of the witnesses and the weight to be given

their testimony. *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 549 (1962); *Eberle v. Adams*, 73 S.W.3d 322, 327 (Tex. App.-Houston [1st Dist.] 2001, pet. filed).

Looking at the sum of the evidence found in the record, it appears that the jury's decision was not against the great weight and preponderance of the evidence. Santikos' experts presented an array of evidence regarding the value of the remainder property after the taking. Cude gave three estimates of the cost to cure from construction companies, including his own. All three were in excess of $719,000, with the highest being approximately $928,000. Appraiser Glen also estimated the post-taking loss of value to the property to be approximately $765,027, and he rounded the total just compensation to $823,000. The County simply stated that it did not believe the remainder property would suffer any damage and failed to introduce any further evidence regarding an approximate cost to cure. After hearing the totality of this evidence, the jury returned a verdict, granting an award of $400,000.

As factfinders, the jury had to determine whether to believe Santikos, to believe the County, or to settle on a truth lying somewhere in between the two factions. While the number actually returned, $400,000, is greatly in excess of the sum advocated by the County ($59,226, the value of Parcel 61), it also falls well below the amount for which Santikos was asking ($823,000, the value of Parcel 61 plus the damages to the remainder). The jury's finding of fair market value was within the range of values supported by the evidence and should not be overturned. *Moore v. Bank Midwest, N.A.*, 39 S.W.3d 395, 401 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). Because there is factually sufficient evidence to support the jury's award, the award is not excessive and we overrule the County's fourth issue.

The judgment of the trial court is affirmed.