

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. WR-73,484-02

### EX PARTE NEAL HAMPTON ROBBINS, Applicant

### ON STATE'S MOTION FOR REHEARING
### APPLICATION FOR AN ARTICLE 11.073 WRIT OF HABEAS CORPUS
### CAUSE NO. 98-06-00750-CR(2) IN THE 410TH DISTRICT COURT
### FROM MONTGOMERY COUNTY

**NEWELL, J., filed a concurring opinion.**

I agree that applicant is entitled to a new trial. That is why I originally voted against granting rehearing and why I join the Court in dismissing the motion for rehearing as improvidently granted. I write separately to explain my reasoning.

As I read the legislative history on the original statute, I cannot subscribe to a legislative intent analysis framed at the outset as discovering the Legislature's answer to a binary choice between either "bad science" or "bad scientists." To the extent that the Legislature considered the scope of the phrase "scientific knowledge" in Article 11.073, it saw no problem with the idea that "scientific knowledge" could include both a scientific

expert's knowledge about a given set of facts as well as the more general sum of knowledge in a given scientific field. Faced with a statute that was written broadly enough to cover changes in the scientist's individual knowledge as well as general scientific knowledge, the Legislature did not attempt to limit the statute to claims alleging only a change in collective scientific knowledge.

## We Cannot Substitute Judicial Policymaking for Legislative Intent

Everyone agrees that we interpret a statute in accordance with its literal language. *Boykin v. State,* 818 S.W.2d 782, 785 (1991). Our function is to interpret the law in such a way as to effectuate the collective intent or purpose of the Legislature. *Id.* We are not empowered to substitute what we believe is right or fair for what the Legislature has written, even if the statute seems unwise or unfair. *Id.*; *see also Parham v. Hughes*, 441 U.S. 347, 351 (1979) ("[A] court is not free . . . to substitute its judgment for the will of the people . . . as expressed in the laws passed by their popularly elected legislatures . . . ."). Neither can we substitute wise or fair legislative policy for that of the duly elected representatives. *Tamez v. State*, 11 S.W.3d 198, 203 (Tex. Crim. App. 2000) (Keller, J., dissenting). "Judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Vance v. Bradley*, 440 U.S. 93, 97 (1979).

## The Text of the 2013 Version of Article 11.073 is at Least Ambiguous

I agree that, under the plain text of the statute, the adjective "scientific" applies equally to both "knowledge" and "method." However, I disagree that the Legislature's choice to also describe "method" with the word "scientific" somehow implies a limitation

on the meaning of "scientific knowledge."  As the Black's Law Dictionary definition of "scientific method" reveals, the phrase itself refers to a distinct, technical definition regarding the process whereby scientific knowledge is acquired. BLACK'S LAW DICTIONARY 1546 (10th ed. 2014).  Given the Legislature's decision not to include this technical term in the statute itself, it is better to regard the word "scientific" as simply an adjective because that is the way the Legislature used it; "Scientific knowledge or method" is not an oblique reference to the technical phrase "scientific method."  Neither is it an implication that the phrase "scientific knowledge or method" is meant to be limited to field-wide changes in knowledge or method as opposed to changes in the scientific knowledge or method of a particular expert.

Relying upon the common definitions of "scientific" and "knowledge" reveals that the phrase "scientific knowledge" as it is used in the statute is susceptible to more than one reasonable interpretation.  "Scientific" is defined as "of or relating to science" and "science" includes both "knowledge about or study of the natural world based upon facts learned through experiments and observation" as well as "a particular area of scientific study." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY at 1045 (10th ed. 1997). And "knowledge" is capable of being defined in a nearly infinite number of ways, including both "the fact or condition of knowing something with familiarity gained through experience or association" and "the sum of what is known: the body of truth, information, and principles acquired by humankind." *Id*. at 647.  Given such broad definitions, the phrase "scientific knowledge" in Article 11.073 could reasonably be interpreted as including both a scientist's

individualized scientific knowledge as well as the sum of knowledge in a given scientific field.[1] The Legislature certainly did not expressly limit the phrase "scientific knowledge" to the sum of knowledge in a given scientific field. Consequently, we must look to extratextual sources to determine whether the Legislature intended to limit the phrase "scientific knowledge" to that discrete category because the phrase is at least ambiguous. *State v. Neesley*, 239 S.W.3d 780, 783 (Tex. Crim. App. 2007).

**Unfortunately, the Legislative History of Article 11.073 is Also Ambiguous**

The Bill Analysis for SB 334–the bill that would eventually become Article 11.073–reveals that the bill related to applications for writs of habeas corpus based upon false and discredited forensic testimony. Senate Research Center, Bill Analysis, SB 344, 83rd Leg. R.S. (2013). The examples given of such cases were "dog-scent lineups, misinterpreted indicators of arson, and infant trauma." *Id.* While Senator Whitmire, the author of the bill, did not specifically reference *Robbins I* in his comments to the committee, Representative Sylvester Turner–author of H.B. 967, an identical companion bill–did cite cases involving "mistaken assumptions about infant trauma" as one basis for his bill.[2] Hearing on H.B. 967

---

[1] It is true courts should not admit expert testimony without a showing of reliability under our rules of evidence. TEX. R. EVID. 702 & 703; *Kelley v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992); *Nenno v. State*, 970 S.W.2d 549 (Tex. Crim. App. 1998). But the United States Supreme Court seems to have rejected the idea that expert testimony must satisfy "wider known truths in a specific field of study" when it dismantled the "general acceptance" test in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Resorting to standards for admissibility of scientific evidence would seem to provide little guidance in interpreting the meaning of "scientific knowledge" as it appears in Article 11.073. *Ex parte Robbins*, 2014 WL 6751684 at *25 (Tex. Crim. App. 2014) (Keasler, J. dissenting) ("Applying *Daubert*'s definition of scientific knowledge may speak to whether Dr. Moore's new opinion would be admissible under the Texas Rules of Evidence at a trial on the date of Robbins's application–a finding a court must make under section (b)(2)–but it does nothing to define the statutory phrase in section (d).")

[2] During an exchange between Representative Turner and Representative Brian Hughes regarding the applicability of dog-scent line-up evidence, Representative Hughes sought agreement from Representative Turner on whether this bill addressed when "better technology comes along." Hearing on H.B. 967 Before the House of Representative Committee on Criminal Jurisprudence, 83rd Leg., R.S. (April 23, 2013) *available at*

Before the House of Representative Committee on Criminal Jurisprudence, 83rd Leg., R.S. (April 23, 2013) *available at* http://www.house.state.tx.us/video-audio/committee-broadcasts/83 (statement from author Rep. Sylvester Turner).  Of course, *Robbins I* is an example of a case dealing with "mistaken assumptions about infant trauma," and the facts of this case were relied upon as evidence of the need for the Bill in the House Research Organization Bill Analysis.  House Research Organization, Bill Analysis, Tex. S.B. 344, 83rd Leg. at 2-3 ("Supporters Say").  Senator Whitmire's discussion of the number of inmates who could have their liberty restored through scientific evidence demonstrates that the Senator's primary concern was addressing the possibility of wrongful convictions, not limiting the scope of his bill to grant relief only in convictions based in part upon "bad science."[3]

The questions of members at the hearings demonstrate that committee members were interested in how the statute would operate, but the Legislature received conflicting viewpoints from the witnesses at the committee hearings.  For example, in the hearing before the House Committee on Criminal Jurisprudence, Jeff Blackburn of the Innocence Project of Texas cited the huge changes in arson science as an example of the situations covered by the bill that would not open the flood gates or burden the courts.  Hearing on H.B. 967 Before the House of Representative Committee on Criminal Jurisprudence, 83rd Leg., R.S.

---

http://www.house.state.tx.us/video-audio/committee-broadcasts/83 (statement from author Rep. Sylvester Turner) (self-transcribed).  But from that discussion, Representative Turner went on to discuss how the bill was necessary to address situations like those presented in cases like *Ex parte Henderson*, 384 S.W.3d 833 (Tex. Crim. App. 2012). *Id*.

[3] It is worth noting that at the same committee hearing, the Senate Committee on Criminal Justice also considered Senate Bill 825.  That bill, authored by Senator Whitmire, targeted wrongful convictions by amending the state bar disciplinary rules to extend the statute of limitations on *Brady* violations by prosecutors.

(April 23, 2013) *available at* http://www.house.state.tx.us/video-audio/committee-broadcasts/83 (testimony of Jeff Blackburn of the Innocence Project of Texas) (self-transcribed).  Not surprisingly, in the hearing before the Senate Committee on Criminal Justice, Brian Wice, Robbins' writ counsel, testified "wholeheartedly" in favor of the bill, and opined that bill would apply to both a change in the science and a change in an expert's knowledge.  Hearing on S.B. 344 before the Senate Committee on Criminal Justice, 83rd Leg., R.S. (March 12, 2013) *available at* http://www.senate.state.tx.us/avarchive/?yr=2013 (testimony of Brian Wice) (self-transcribed).  More pointedly, Michael McDougal, the former District Attorney of Montgomery County ultimately responsible for the prosecution of Robbins' case, testified specifically about his belief that Article 11.073 was necessary because it was "not right" that Robbins had not received relief based upon the change in Dr. Moore's opinion.  *Id.* (testimony of Michael McDougal) (self-transcribed).  No one testified against the bill or suggested that the phrase "scientific knowledge" should be limited to situations involving field-wide scientific advances.  Neither did any legislators express any opinion that the phrase "scientific knowledge" needed to be limited in its scope.

Of course, there is no inherent link between what a witness answers in response to questions from individual legislators and what the Legislature intended upon passing the bill. But even assuming that the Legislature was primarily focused upon cases involving changes in scientific knowledge generally, the Legislature was at least aware that the term "scientific knowledge" could apply in the context of the facts presented in this case and did not exert any effort to couch the statute in more narrow terms.  Giving the words the broadest possible

understanding to which they are susceptible in the English language, "scientific knowledge" as used in Article 11.073 refers to both changes in collective scientific knowledge and the individual scientific knowledge of the testifying expert. As we observed in *Bingham v. State*:

> Because "[a]ll words, phrases and terms used in th[e] Code [of Criminal Procedure] are to be taken and understood by their usual acceptation in common language, except where specifically defined," courts should not be involved in the business of redefining words used in an ordinary sense by the Texas Legislature. Tex. Code Crim. Proc. art. 301. *See also* Tex. Penal Code § 1.05(b); Tex. Gov't. Code Ann. § 311.01. Rather, when read in context, such words should be open to the broadest possible understanding to which they are reasonably susceptible in the English language. *Vernon v. State*, 841 S.W.2d 407, 409-10 (Tex. Crim. App. 1992).

915 S.W.2d 9, 10 (Tex. Crim. App. 1994). In the face of such ambiguity and the absence of any suggestion of a legislative intent to narrow the meaning of the words "scientific" or "knowledge," I would interpret the phrase "scientific knowledge" according to the broadest possible understanding of the words. I agree with this Court's opinion in *Robbins II* that the phrase "scientific knowledge" in the 2013 version of Article 11.073 applies to both the general knowledge of a particular scientific community as well as the individual knowledge of a testifying expert.

### If We Can Consider the 2009 and 2011 Bills That Did Not Pass We Should Also Consider the 2015 Amendment That Did Pass

Interpreting "scientific knowledge" to apply to both general and specific knowledge is bolstered by the Legislature's subsequent amendment to Article 11.073 in 2015 while this case was pending on rehearing. Admittedly, this Court has held that "one session of the legislature does not have the power to declare the intent of a past session, and a legislative construction of an act of another legislature is entitled to little weight." *Chase v. State*, 448

S.W.3d 6, 27 (Tex. Crim. App. 2014). However, we based that holding in *Chase* upon *Ex parte Schroeter*, 958 S.W.2d 811 (Tex. Crim. App. 1997), a case where relying upon the subsequent statute would have made the defendant's punishment more severe by retroactively denying him parole eligibility. Similarly, we refused to rely upon subsequent legislative enactments where the original statute was unambiguous. *Volosen v. State*, 227 S.W.3d 77, 80-81 (Tex. Crim. App. 2007).

But in *Brown v. State*, 943 S.W.2d 35, 40 (Tex. Crim. App. 1997), we did consider subsequent amendments to a statute as some evidence of the Legislature's intent where both the text and the legislative history of the statute at issue was ambiguous, and the amendments "appear[ed] to be a response to appellate court decisions construing the statute." The Bill Analysis for House Bill 3724, which amended Article 11.073, makes very clear that the objective of the amendment was to codify this Court's decision in *Robbins II.* House Committee on Criminal Jurisprudence, Bill Analysis Report on H.B. 3724, 84th R.S. (2015). I believe this case falls under *Brown* rather than the general rule laid out in *Chase* or *Schroeter*. Applying *Brown*, this amendment provides at least some evidence of the Legislature's intent that the phrase "scientific knowledge" in Article 11.073 encompassed more than general scientific knowledge. And if the statements of the author of S.B. 344 are the most compelling extratextual source of the legislative intent, then Senator Whitmire's sponsorship of H.B. 3724 should be deserving of at least some weight.[4]

---

[4] It is worth noting that Representative Hughes entered a statement regarding his vote that he was away from his desk but would have voted yes on the amendment to Article 11.073. It is also worth noting that there were only three votes against the amendment among both the House and Senate.

If we cannot consider the 2015 amendment to Article 11.073 because one session of the legislature does not have the power to declare the intent of a past session, we should also not be reading S.B. 344 as a declaration of the intent of the past legislative sessions that failed to pass versions of Article 11.073 in 2009 and 2011. When considering "former statutory provisions," this Court has typically relied upon prior versions of statutes that have been passed by the Legislature. *See e.g. Chase*, 448 S.W.3d at 22-23 (examining the previously enacted versions of § 822.013 of the Texas Health and Safety Code). Pointing to versions of a statute that did not pass to argue that SB 344 demonstrates the Legislature's intent to ratify that previous understanding of Article 11.073 is at least as problematic as considering a subsequent amendment to Article 11.073 passed in reaction to this Court's interpretation of the statute. Whatever the Legislature intended in 2009 and 2011, it did not carry the day.

That is why I draw a different conclusion from the Legislature's inability to pass previous versions of Article 11.073 in 2009 and 2011. While the text of Article 11.073 remained largely unchanged, the stated reasons for its passage expanded. The reasons given in support of passing Article 11.073 in 2009 and 2011 did not include any reference to cases involving scientific evidence that had been contradicted post-conviction such as those involving dog-scent lineups, misinterpreted indicators of arson, and infant trauma. Senate Comm. on Crim. Justice, Bill Analysis, Tex. S.B. 1976, 81st Leg., R.S. (2009); Hearing on H.B. 220 Before the House of Representative Committee on Criminal Jurisprudence, 82nd Leg., R.S. (Feb. 22, 2011) *available at* http://www.house.state.tx.us/video-audio/committee-

broadcasts/82 (statement from author Rep. Pete Gallego) (self-transcribed). And, as the testimony at the committee hearings on the 2013 bill reveals, the Legislature passed Senate Bill 344, at least in some measure, as a reaction to this Court's handling of cases involving expert testimony such as *Robbins I* and *Ex parte Henderson*. Given that the phrase "scientific knowledge" can be interpreted to cover the knowledge of an individual scientist, I think it reasonable to regard the passage of Senate Bill 344 as a recognition by the Legislature that Article 11.073 would also cover situations like those presented in *Robbins I* and *Henderson*. There was no need to change the text of the statute because it already covered those circumstances. At least, not until this Court granted rehearing in *Robbins II.*

As part of the legislative history analysis, I am perfectly comfortable considering both the 2009 and 2011 bills as well as the 2015 amendment as circumstances under which the statute was enacted. *See* TEX. GOV'T. CODE ANN. § 311.023 (West 2011) (allowing courts to consider "circumstances under which the statute was enacted" when construing a statute); *Brown*, 943 S.W.2d at 40. Looking at the whole course of legislation on this topic establishes that Article 11.073 does cover the situation presented in this case. But if we are not going to consider the 2015 amendment, we should not be considering the 2009 and 2011 bills as evidence of one legislative session's attempt to ratify the intent of a past legislative session.[5]

---

[5] I agree with Judge Richardson that this Court can apply procedural or remedial statutory amendments to an application for a writ of habeas corpus that is pending at the time of the enactment when the Legislature does not specify an intent that the statute should apply prospectively. However, I do not feel we have to reach that holding in this case because the term "scientific knowledge" already included both an individual scientist's knowledge as well as the general knowledge of scientists in a particular field when Article 11.073 was enacted in 2013.

## Conclusion

Even though I believe that the Legislature crafted Article 11.073 broadly enough to include both "bad science" and "bad scientists," I am not necessarily sanguine about its impact upon the finality of judgments. As Judge Cochran observed in her dissenting opinion in *Robbins I*:

> Part of the problem is that there is a fundamental disconnect between the worlds of science and of law. Science is constantly evolving by testing and modifying its prior theories, knowledge, and "truths." It is a hallmark of the scientific method to challenge the status quo and to operate in an unbiased environment that encourages healthy skepticism, guards against unconscious bias, and acknowledges uncertainty and error. The legal system, on the other hand, "embraces the adversary process to achieve 'truth,' for the ultimate purpose of attaining an authoritative, final, just, and socially acceptable resolution of disputes." The judicial system normally accepts that "opinions grounded in science carry their own tests for reliability and usefulness, thus inspiring special confidence in judgments based on them." This disconnect between changing science and reliable verdicts that can stand the test of time has grown in recent years as the speed with which new science and revised scientific methodologies debunk what had formerly been thought of as reliable forensic science has increased. The potential problem of relying on today's science in a criminal trial (especially to determine an essential element such as criminal causation or the identity of the perpetrator) is that tomorrow's science sometimes changes and, based upon that changed science, the former verdict may look inaccurate, if not downright ludicrous. But the convicted person is still imprisoned. Given the facts viewed in the fullness of time, today's public may reasonably perceive that the criminal justice system is sometimes unjust and inaccurate. Finality of judgment is essential in criminal cases, but so is accuracy of the result–an accurate result that will stand the test of time and changes in scientific knowledge.

*Ex parte Robbins*, 360 S.W.3d 446, 469-70 (Tex. Crim. App. 2011) (Cochran, J., dissenting) (citations omitted). The back-and-forth between this Court and the Legislature over this case suggests to me that perhaps finality and accuracy, in the context of forensic science used in securing a conviction, are much harder to reconcile than many would care to admit. As a

matter of policy, limiting the phrase "scientific knowledge" to field-wide changes in science errs on the side of finality, but it is a hard choice that comes at the expense of accuracy. By enacting Article 11.073 without any express limitation on what constitutes "scientific knowledge," the Legislature tipped the scales in favor of accuracy perhaps at the expense of finality. And that is a decision that the Legislature gets to make, not this Court.

Our job is to do our best to discover the Legislature's intent, not substitute our policy preferences for the will of the people as expressed through their elected representatives. Proceeding from the position that the broad phrase "scientific knowledge" is limited in meaning without any evidence that the Legislature attempted to narrow the scope of the phrase belies a policy choice not a resort to cannons of statutory construction. That is why I agree with this Court's original majority opinion and join in the denial of the State's motion for rehearing.

Filed: January 27, 2016

Publish